No. 2,275.

THE PEOPLE OF THE STATE OF CALIFORNIA, RESPONDENTS, *v.* JAMES PHIPPS, APPELLANT.

CRIMINAL PRACTICE.—INDICTMENT.—DESCRIPTION OF OFFENSE.—Though an indictment give an erroneous appellation, or fail to give any appellation, to the offense, if the acts constituting the offense, as defined by the statute, are sufficiently stated, the requirements of the Criminal Code, in that respect, are answered.

IDEM.—CIRCUMSTANTIAL EVIDENCE.—Where independent facts and circumstances are relied upon to identify the accused as the person committing the offense charged, each essential independent fact in the chain or series of facts relied upon to create a presumption of guilt must be established to a moral certainty, or beyond a reasonable doubt.

IDEM.—INSTRUCTIONS.—When the evidence against the accused is entirely circumstantial, and is conflicting in relation to a material fact going to make up the chain of circumstances, an instruction to the effect that "if the jury entertain a reasonable doubt as to the existence of such fact, the defendant must be acquitted," is pertinent and appropriate, and should be given.

*Per* CROCKETT, J.:

INSTRUCTION.—CRIMINAL PRACTICE.—In a criminal prosecution, an instruction from the Court to the jury, that they must convict, "although they may not be *entirely* satisfied, from the evidence, that the defendant, and no other or different person, committed the offense," is erroneous.

EVIDENCE NECESSARY TO CONVICT.—No conviction should be had unless the jury is "*entirely* satisfied," from the evidence, that the defendant is guilty.

APPEAL from the County Court of El Dorado County.

*Quint & Hardy,* for Appellant.

*First*—The indictment charges the appellant with the crime of "arson."

By the statute of California the crime of "arson," as it existed at common law, has been abolished. The statute creates two new offenses, by distinct appellation, which may be committed against "habitations and other buildings." The *acts* constituting these *two* offenses are essentially different from the acts which constitute arson at common law. "Arson," at common law, "is the malicious and wilful burning of the house or out-house of another man." (Wharton's American Criminal Law, Vol. II, Sec. 1658; 4 Blackstone's Com. 220.)

The statute makes the "wilful and malicious burning, *in the night time,* of any *dwelling house in which there shall be at the time some human being,* arson *in the first degree;*" and

certain other acts, including the burning of another's house in the day or night time, no human being being at the time therein, and the burning of one's own house, with intent to defraud insurance companies, *"arson in the second degree."* (Hittell's Digest, Secs. 4 and 5, Arts. 1557–8.)

Thus it is seen that the statute not only defines two purely statutory offenses by making those offenses consist of *different acts*, but also gives them entirely different *appellations*.

The words *"first degree"* and *"second degree"* are here made parts of the legal appellations of the two crimes.

If we are correct, and there is no longer in this State any offense known as "arson," the indictment does not charge any offense known to the law.

While it is not necessary that an indictment should state in terms that the offense charged is a felony, or is a misdemeanor, this Court has held that "the legal appellation of the crime as given in the statute, defining the offense, must be stated," etc.   (*People* v. *War*, 20 Cal. 117.)

*Second*—The indictment charges two offenses in one Court.

Here are *two* houses, owned by different persons, charged to have been set fire to and burned by the defendant.

"The indictment shall charge but one offense." (Hittell's Digest, Art. 1828, Sec. 241.)

It may be said the charge that the defendant did set fire to and burn his own building, does not state facts sufficient to make that an offense.

This, however, does not obviate the difficulty.   To render a pleading bad for duplicity, it is not necessary that either of the alleged offenses should be charged in language sufficient to constitute an offense. *It is enough that an attempt has been made, to state two offenses.*

*Third*—This indictment does not *charge* that the appellant had been guilty of arson in the first degree or in the second degree. It is merely arson.   The burning of his own building was arson in the second degree—defectively charged, it is true, but nevertheless arson in the second degree.

*Fourth*—Although the instructions asked for, and refused by the Court, were pertinent to the evidence, and were

regarded by counsel as accurately expressing the law, they seem to have been refused purely because they did not declare the law correctly.

The learned Judge seems to have differed entirely from the view of counsel in the Court below, upon principles which have been regarded as elementary.

The indictment charged that the defendant did set fire to his own house in the night time. If, at the time, there were some human beings therein, the act was arson in the first degree ; but if there were no human beings therein, the act was lawful, unless it was done to defraud the insurance company.

The first instruction was intended to state the law, and to inform the jury that under that indictment they could not convict, even if they did believe that the defendant set fire to his house in order to defraud the insurers.

*Fifth*—The seventh instruction was based upon the familiar principle that the circumstances must exclude the hypothesis that some other person may have done the deed, where it is already *ascertained* that the offense has been committed.

"Circumstantial evidence is always insufficient where assuming all to be proved which the evidence tends to prove some other hypothesis may still be true. For it is the actual exclusion of every other hypothesis which invests mere circumstances with the force of proof. (1 Starkie, 506, Sec. 76.)

This rule, old as the law itself, has not been modified or departed from in any stage of the history of criminal jurisprudence, and cannot be departed from without adopting the odious and revolting principle that to secure the punishment of all the guilty it is necessary that there should be an occasional conviction of an innocent man.

*Sixth*—The object of the instruction was to meet an argument by the District Attorney, that the defendant might not have been personally present at the setting fire to the house, and yet that he would be guilty if he had procured another to do so. The case did not authorize such an argument, and therefore the instruction should have been given.

The eleventh instruction was asked for the same purpose, and to direct the attention of the jury to the application of the abstract rule concerning reasonable doubt to the concrete facts of the case.

It does not matter in what form the counsel endeavored in the Court below to have the jury impressed with the fact that upon the case made the defendant could not be convicted unless he was the actor in the offense, it was studiously refused.

"In practice, where it is certain that one of two individuals committed the offense charged, but it is uncertain whether the one or the other was the guilty agent, neither of them can be convicted." (1 Starkie, 507.)

The defendant's counsel asked for the fourteenth instruction, and all of it was given except the concluding words: "and in case of reasonable doubt, the jury shall acquit."

In the next instruction, to the same effect, but in more direct language applicable to the disputed points in the case, and the prevailing feature of the law, the concluding sentence of the instruction was refused.

The seventeenth instruction was of the same character, and the concluding sentence was again refused.

In refusing the last instruction asked for, the whole case for the defendant was ignored. The proof that a crime had been committed was only circumstantial, and the Court was requested to charge the jury that if there was any reasonable doubt as to the completeness of the proof of the body of the offense, it was better to err in acquitting than in convicting.

The Court charged the jury that a conviction could be had upon circumstantial evidence which produced *nearly* the same degree of certainty as that which arises from direct testimony, etc.

We are aware that the Court below was following a decision rendered in this Court, and that unless we can convince this Court of the impropriety of that decision, of course there will be found no error in the charge.

The language used in the charge, which was followed in the Court below, cannot be found in any other law book that has come under our observation, than that in which the case of *The People* v. *Cronin* (34 Cal. 191) is reported.

*First*—The presence of the word implies that something short of moral certainty may be relied on to convict. This proposition is monstrous. You would not convict in any case if you were only "nearly" as well convinced of the defendant's guilt as you would be by the direct evidence of a creditable witness.

*Second*—*The law is written the other way.* "On the other hand, a juror ought not to condemn unless the evidence exclude from his mind all reasonable doubt as to the guilt of the accused. (1 Starkie, 514, Sec. 79.)

This is, beyond cavil, the universal rule. The evidence derived from circumstances must not be "*inferior*" (it *is* inferior if it is only "nearly" equal) to that which is derived from the testimony of a single witness.

A dissenting opinion of Justice Lewis, of Nevada, in a criminal case, presents our view of the proper administration of the law in language so forcible and appropriate that we adopt it as our own: "The criminal has a right to claim that justice shall only be meted out to him in exact accordance with the strict and inflexible rules of law. It is his right to have the law governing his case clearly and correctly expounded to the jury; notwithstanding the proof of his guilt may be perfectly conclusive, yet any material error in so stating the law entitles him to a new trial. That may not be a good rule, but *ita lex scripta est.*" (*State* v. *Millain*, 3 Nevada, 478.)

*Jo Hamilton*, Attorney General, for Respondents:

*First*—The indictment is not open to the criticism with which appellant's attorneys ingeniously attempt to assail it. It states the facts constituting the offense in ordinary and concise language, and clearly conforms to Sections 237 and 238 of the Criminal Practice Act.

Under the authority of the decisions of this Court in the cases of *People* v. *Hood* (6 Cal. 236), *People* v. *Lloyd* (9 Cal.

54), *People* v. *Dolan* (9 Cal. 576), *People* v. *Rodriguez* (10 Cal. 50), *People* v. *White* (34 Cal. 183), *People* v. *Cronin* (34 Cal. 191), the indictment is good and appellant's objections are not well taken.

*Second*—It is strenuously urged by the appellant that the indictment charges, or attempts to charge, two separate and distinct offenses: First—The burning of his own house; and, Second—The burning of the house of Spickert, in which were certain persons likely to be burned.

That the indictment only charges one offense, even though it charges two buildings to have been burned; the burning of his own house and that of Spickert are charged to be and constitute but one *act*.

*Third*—The seventh instruction found on the same paper is too broad : "If some one else may have done the act charged against the defendant, then the defendant cannot be convicted." This instruction would take from the jury all power of discretion, if, within the range of probabilities, or even possibilities, the crime could have been committed by another, and not the defendant. The instruction excludes the idea of reasonable hypothesis, and forces the jury to assume any hypothetical case by which the act could have been done by another.

SPRAGUE, J., delivered the opinion of the Court, TEMPLE, J., RHODES, C. J., and WALLACE, J., concurring :

The objection to the indictment, that it fails to give the proper legal appellation of the crime, is not well taken; it is but an objection to matter of form, not tending to the prejudice of defendant. The acts constituting the offense are sufficiently stated to give explicit information of the offense as defined by the statute, and the failure to insert the statutory appellation of the crime, in accordance with the form prescribed by Section 238 of the Criminal Practice Act, does not vitiate. (Crim. Pr. Act, Sec. 247 ; *People* v. *Beatty*, 14 Cal. 572.)

, Though an indictment give an erroneous appellation, or fail to give any appellation to the offense, if the acts consti-

tuting the offense, as defined by the statute, are sufficiently stated, the requirements of our Criminal Code, in that respect, are answered. (Crim. Prac. Act, Secs. 237, 246.)

The indictment, although liable to criticism as to form, is a sufficient valid indictment for the offense designated in our statute as arson in the first degree, and is not obnoxious to the objection that it charges two distinct offenses.

The indictment charges the defendant as a principal. The entire evidence, as given on the trial, is contained in the record, and so far as it tends to criminate defendant, is entirely circumstantial; from this evidence, it sufficiently appears that there could be no plausible theory upon which the prosecution could base a rational presumption of defendant's guilt, except that he set fire to the premises with his own hands. The tenth instruction, therefore, asked for by the defendant, and refused by the Court, should have been given, and although from the record before us we cannot distinctly discover that defendant was prejudiced by this error, yet, from the fact that error is disclosed, we must presume that defendant's legal rights were thereby prejudiced.

The fourteenth and fifteenth instructions asked for by defendant, were refused as asked, but the Court gave the fourteenth, except the closing clause, which was in the following words : "And, in case of reasonable doubt, the jury should acquit;" and the fifteenth, with the exception of the closing clause, which was in the following words : "And, fairly considering the liabilities to mistake person and time, if a reasonable doubt exists, the defendant must be acquitted," which closing clauses the Court refused to give.

These instructions had reference to the controverted fact, or circumstance, as to whether or not the defendant was, or could have been, in the City of Placerville, at the time the fire occurred. The evidence in behalf of the prosecution, tended to establish that defendant left Sacramento in the 3 P. M. railroad train on the 10th of September, arrived at Folsom about 5 o'clock P. M. same day, and was seen at different points between Folsom and Placerville the same evening, on horseback, going in the direction of Placerville, and was last seen that evening, between 7 and 8 o'clock,

within about ten miles of Placerville; the burning with which defendant is charged having occurred at Placerville, between 1 and 2 o'clock on the morning of the 11th.

The evidence in behalf of defendant tended to establish that defendant was at the City of Sacramento during the afternoon of the 10th of September, and that he could not have been in Placerville, or in the County of El Dorado, at the time the fire occurred. The fact that defendant was in the County of El Dorado on the evening of the 10th of September, and was, on that evening, going in the direction of Placerville, was an essential fact and circumstance in the series of facts sought to be established by the prosecution, upon which a presumption of his guilt was based, and without which an essential link in the chain of circumstances, tending to identify the defendant as the party committing the offense, would be wanting; hence, the closing clauses of the fourteenth and fifteenth instructions were pertinent and appropriate, and should have been given, and the refusal of the Court to give the same, was error.

When independent facts and circumstances are relied upon to identify the accused as the person committing the offense charged, and, taken together, are regarded as a sufficient basis for a presumption of his guilt to a moral certainty or beyond a reasonable doubt, each material independent fact or circumstance necessary to complete such chain or series of independent facts, tending to establish a presumption of guilt, should be established to the same degree of certainty as the main fact which these independent circumstances, taken together, tend to establish; that is, each essential, independent fact in the chain or series of facts relied upon to establish the main fact, must be established to a moral certainty, or beyond a reasonable doubt. (3 Greenl. Ev. Sec. 30; Starkie Ev. 9th Am. from 4th Lond. Ed. 856; Burrill on Circ. Ev. 733; *Sumner* v. *State,* 5 Blackf. 579; *Commonwealth* v. *Webster,* 5 Cush. 313, 317, 318.)

With these views, it becomes unnecessary to examine the further points presented by appellant.

The record in this case has been presented in utter disregard of the rules of this Court, and the manner in which it

is gotten up and presented here, is discreditable in the extreme to the Clerk of the Court, upon whom was devolved the duty of preparing it, and by no means complimentary to the attorneys who were instrumental in bringing it here. The record proper of the case, except that portion contained in the bill of exceptions, is put upon some ten small printed blank sheets, with printed matter erased in part and manuscript matter inserted and interlined, and filled in on the margin ; then follows the bill of exceptions, containing the evidence, upon very large record paper ; and then, detached in a separate parcel of small legal cap paper, are the instructions asked for by the defendant, and the rulings of the Court thereon—altogether presenting a most slovenly, unintelligible mass, without even a pretense of an index. We feel justified in these comments, as we are very frequently annoyed and delayed in our labors by the want of care and attention to our rules in the preparation of records of criminal cases brought to this Court.

Judgment and order denying new trial reversed, and cause remanded for re-trial.

CROCKETT, J., delivered the following opinion :

I concur in the judgment on the ground that the Court erred in charging the jury, "that if they shall be satisfied from the evidence of the defendant's guilt to a moral certainty, and beyond a reasonable doubt," they must convict him, "although they may not be *entirely* satisfied from the evidence that the defendant, and no other or different person, committed the alleged offense." The first branch of this instruction is a correct exposition of the law ; but the latter clause of it was not only calculated to mislead the jury, but is repugnant to the first clause. Unless the jury was "*entirely* satisfied from the evidence that the defendant, and no other or different person," committed the offense, they must, of necessity, have had a reasonable doubt of his guilt. An absence of all reasonable doubt necessarily implies that the fact was established in so conclusive a manner that the jury was "*entirely* satisfied" of its truth. If not

"*entirely* satisfied" of the defendant's guilt, his conviction would be the result of the opinion of the jury, that the probability of his guilt was very strong, but they were not "entirely satisfied" of it. In my opinion, no conviction ought ever to be had in a criminal prosecution, unless the jury is "entirely satisfied" from the evidence that the defendant is guilty. They may believe that there is a *possibility* of his innocence, and yet properly convict him; because, though it may be *possible* he was innocent, the jury may, nevertheless, be "entirely satisfied" he was guilty. The term "entirely satisfied," in this connection, implies a firm and thorough assent of the mind and judgment to the truth of a proposition; and this may exist, notwithstanding a *possibility* that the fact may be otherwise.

If it was widely published in the newspapers that a great fire had occurred in the City of New York on a specified day, all the details of which were given, and if these accounts were corroborated by private letters from persons of known respectability, those who might read these accounts would be convinced beyond a reasonable doubt; that is to say, they would be "entirely satisfied" that the fire had occurred; nevertheless, it would be *possible* that all these accounts were fabricated and the letters written for a speculative or fraudulent purpose. So in this case, if the evidence convinced the jury to a moral certainty, and beyond a reasonable doubt, that the defendant was guilty, they must, of necessity, have been "entirely satisfied" that he "and no other or different person committed the alleged offense." And yet the instruction under consideration necessarily implies that the jury may be convinced to a moral certainty, and beyond a reasonable doubt, of the defendant's guilt, and may, nevertheless, not be "entirely satisfied" that he committed the offense. The two propositions are repugnant to each other, and cannot stand together. When the judgment is convinced of the existence of a fact to a moral certainty, and beyond a reasonable doubt, it is "entirely satisfied" that the fact exists— and nothing less than this degree of moral certainty will justify a conviction. But from the latter clause of the instruction, I am discussing, the jury may well have inferred

that they were authorized to convict the accused, though "not entirely satisfied from the evidence that the defendant and no other or different person committed the offense." I think this instruction was erroneous, and that the judgment, for that reason, ought to be reversed.