[ No. 787.]

# THE STATE OF NEVADA, RESPONDENT, *v.* JOHN W. NELSON, APPELLANT.

INDICTMENT FOR ROBBERY—OWNERSHIP OF PROPERTY.—In an indictment for robbery from a stage-coach, of property belonging to Wells, Fargo & Co., the ownership of the property may be laid in the driver of the coach.

IDEM.—The essential averment is that the property did not belong to the defendant.

IDEM—DIFFERENT COUNTS.—Where there are two counts in the indictment, one alleging the property in the driver of the coach, and the other averring that the property belonged to Wells, Fargo & Co.: *Held*, that the district attorney was not bound to make an election and confine himself to one count of the indictment.

IDEM—RIGHT OF DEFENDANT.—*Held*, that inasmuch as the defendant had no right to demand an election between the counts in the indictment in the first place, that he had no right to insist upon a voluntary election made by the district attorney, unless in consequence of reliance upon such election being adhered to, he had done or omitted to do something by which he would have been prejudiced.

INSTRUCTION AS TO CIRCUMSTANTIAL EVIDENCE—DEGREE OF CERTAINTY.— The court gave this instruction: " If you believe the evidence given in this case, in order to convict, the circumstances should be such as to produce nearly the same degree of certainty as that which arises from direct testimony, and to exclude a rational probability of innocence. The circumstances ought to be of such a nature as not to be reasonably accounted for on the supposition of the prisoner's innocence, but perfectly reconcilable with the supposition of the prisoners's guilt:" *Held*, correct.

REASONABLE DOUBT.—ENTIRE SATISFACTION.—The court in instructing the jury in regard to reasonable doubt, uses the following language: " And if the jury are satisfied from the evidence, beyond a reasonable doubt, that the defendant committed the crime charged against him, they are not legally bound to acquit him because they may not be *entirely satisfied* that the defendant and no other person committed the alleged offense:" *Held*, not erroneous.

IDEM.—If a man believes that a defendant may possibly be innocent, he cannot be said to be " entirely satisfied" of his guilt, and yet he may be satisfied of it beyond a reasonable doubt, and may convict.

APPEAL from the District Court of the Ninth Judicial District, Elko County.

The fifth instruction asked by the defendant and refused by the court—referred to in the opinion—reads as follows: "If the jury find from the evidence in this case that the property alleged to have been taken was being conveyed by the proprietors of the stage line for an express company, under a contract with such express company, and that the said G. N. Brown, who is alleged in the indictment as being the owner of said property, was only the driver of the stage in which said property was being conveyed, was only the hired man, servant and employee of the proprietors of such stage line, hired and employed by them for that specific purpose only, then I charge you that the said G. N. Brown had no such title to, or possession of the property alleged to have been taken which will sustain a conviction upon the indictment in this case, and you will find the defendant 'not guilty,' as charged in the indictment, unless you further find from the evidence that the said G. N. Brown was the absolute owner of the property."

*J. L. Wines*, for Appellant.

I. What kind of ownership must the party, alleged to be the owner, have in the property, the subject of the robbery, in order to support the indictment; or, in other words, to avoid the effect of a variance between the indictment and the proof? It may safely be assumed that the ownership of the property must be alleged in the same manner in an indictment for robbery that it must in larceny. At least, the indictment must in some way negative property in the defendant, and if the pleader chooses to specially aver ownership in a certain individual, he must prove this ownership as alleged. (2 Bish. Crim. Prac., sec. 1007; 2 Halstead Law of Ev., 280; *People* v. *Vice*, 21 Cal. 344; *Hogg* v. *State*, 3 Bl'kf'd. 326.)

That ownership may be alleged to be in one not the absolute owner, we do not question; but such person, we claim, must belong to that class of owners known as special owners, such as have a special or qualified property in the property, such, for instance, as "innkeepers," "common carriers," "agisters," "livery men," mechanics employed

to manufacture or repair an article, persons who have a lien upon the property for their claim, and who have such a property in, and possession of, the article, that it cannot be taken from them until the conditions upon which they became possessed of it have been performed.

Can it be said that Brown, in this case, had any such ownership or possession of the property? He was neither employed by the owners of the property or by the express company. He was a mere servant of the stage company, and had nothing but a bare charge or custody of the property, but no ownership whatever; knew nothing of the contents of the express box; carried no key to the box; received the box from the express agent in the morning, and delivered it to the agent in the evening. Defendant's fifth instruction ought to have been given. (*People* v. *Bennett*, 37 N. Y. 117; *Commonwealth* v. *Morse*, 14 Mass. 216.) The proprietors of the stage line were in the actual possession of the property through their servant, G. N. Brown, for it is well settled that the possession of the servant is the possession of the master. (*Brownell* v. *Manchester*, 1 Pick. 232–234: *Ludden* v. *Leavitt*, 9 Mass. 104; Story on Bailments, 5th ed., secs. 93 *a*, 93 *b;* 1 Denio, 123, and cases cited.)

II. The court committed an error in giving instructions Nos. 5 and 9 asked for by the state. The jury were told, and to which we do not object, that circumstantial evidence was of a nature identically the same with direct evidence; but they were again told, in instruction No. 5, that the circumstances should be such as to produce *nearly* the same degree of certainty as that which arises from direct testimony. In other words, the court instructed the jury that they would be justified in convicting the defendant where the evidence was circumstantial, although there might be more doubt in their minds than if the evidence was direct. We understand the test to be: "Is there a reasonable doubt?" but in this case the court declared and erected some other standard by which the jury should be governed.

We think such an instruction dangerous and liable to mislead the jury. The term "reasonable doubt" can be easily arrived at by a jury; but in using the word "nearly," as it

was used in this instruction, opens up a very wide range of thought for a juror.

We also desire to call the attention of the court to instruction No. 7, where the jury was informed by the court that they were justified in finding the defendant guilty, although they might not be *entirely satisfied* that he and not some other person committed the offense. It is true the instruction is copied from one approved of by the supreme court of California in 34 Cal.; yet if the question is an open one in this state, we submit that it is a dangerous innovation upon the rule of "reasonable doubt." It is the coining of a new phrase upon this question, likely to embarrass jurors, prejudice the rights of defendants, and lead to the unsettling of a long line of decisions heretofore recognized as binding. (1 Bish. Crim. Pro., sec. 1052; *People* v. *Phipps*, 39 Cal. 326, and opinion of Crockett, J., on p. 334; *People* v. *Padilla*, 42 Cal. 535–40.)

*J. R Kittrell, Attorney-General*, for Respondent.

I. In larceny, it is everywhere decided that the ownership of stolen property may be laid in either the bailor or the bailee, that it may be laid in him who has either a general or special property in the articles stolen. (2 Bish. Crim. Pr., sec. 682; 2 Hale's P. C., 181; 1 Id. 513; *People* v. *Bennett*, 37 N. Y. 117; *Poole* v. *Symonds*, 1 N. H. 289; *Rex* v. *Deakin & Son O. B.*, 2 East. P. C. 653.)

The test of ownership in such cases as the one at bar appears to be this: that if the party from whose possession the goods were taken had such property in them, at the time of their abstraction, as would enable him to maintain an action of trespass, replevin or trover against the party taking the goods, then it is proper for the ownership to be laid in him in whose favor such action would lie. (*Poole* v. *Symonds, supra;* 2 Russ. on Crimes, 86; 2 Bish. Cr. Pr., sec. 683.)

Proof that the person alleged to be the owner had a special property, or that he had it to do some act upon it, or for the purpose of conveyance, or in trust for the benefit of another, would be sufficient to support the allegation in

the indictment. (*State* v. *Sommerville*, 21 Me., and cases cited.)

It is contended by appellant's counsel, in his written argument, that the court below erred in giving to the jury instructions five and seven. It will be perceived by comparing these instructions with those given in the case of the *People* v. *Cronin* (34 Cal. 191), that they are identical, and that Sanderson, J., in a well-considered opinion, upholds them as a true exposition of the law.

By the Court, BEATTY, J.:

The defendant in this case appeals from a conviction of highway robbery. The indictment under which he was tried contains two counts, in the first of which the ownership of the property taken is laid in one Brown, who, as the testimony shows, was merely the driver of the stage upon which it was being conveyed. The second count lays the property in Wells, Fargo & Co. In other respects it is identical with the first. It appears from the bill of exceptions that when the case was called for trial the district attorney "in open court elected to proceed under the first count of the said indictment, and to offer no evidence under any other count, and did not during the progress of the trial offer any evidence under any other count of said indictment except the said first count of said indictment."

But this same bill of exceptions proceeds to show that, notwithstanding this election by the district attorney to confine himself to the first count of the indictment, he did introduce evidence which proved very clearly that some of the property taken at the time of the robbery belonged to Wells, Fargo & Co., and which did therefore in fact support the second count, although we must suppose it was not intended for that purpose. Under these circumstances the defendant, at the close of the trial, requested the court to instruct the jury that if Brown, who was alleged in the first count to be the owner, was merely the driver of the coach as the servant of the proprietors, they must find a verdict of not guilty. The refusal of the court to give this instruction is assigned as error, and is made the basis of a

very elaborate and, to say the least of it, a very plausible argument in support of the proposition that in an indictment for robbery the ownership of the property cannot properly be laid in one who sustains no other relation to it than that of driver of the coach by which it is being conveyed. There are authorities, however, in direct conflict with this proposition, and the case of *Rex* v. *Deakin*, cited in 2 East's P. C. 653, was this identical case, except that there the property was stolen instead of being taken by force. But this makes no difference, for it is certain that the rule is no more stringent in cases of robbery than in cases of larceny. The only thing essential in either case seems to be an averment which shall show conclusively that the property does not belong to the defendant. And courts have shown a disposition to allow the proof of any sort of interest in or right to the custody of the property to be sufficient proof of ownership. We are quite willing to go as far in this direction as any respectable precedent will warrant us in going, because the protection of innocence can never by any possibility require any strictness of proof on this point.

Besides, even if the appellant were right in the proposition for which he contends, it is not by any means certain that his instruction ought to have been given. The district attorney was not bound to make an election, and confine himself to one count of the indictment. The very object of the statute in allowing the same offense to be charged in different counts, is to prevent a variance, and that object would be entirely defeated if the district attorney could be compelled to abandon every count but one before the trial. In this case it does not appear that the court compelled an election, and so far as does appear, it was entirely gratuitous on the part of the district attorney. As the defendant had no right to demand the election in the first place, he had no right to insist upon adherence to it unless, in consequence of reliance upon its being adhered to, he had done or omitted to do something by which he would have been prejudiced. But he does not show that he changed his position in any way in consequence of a reliance on the

election of the first count. If he was induced by the action of the district attorney to omit calling any witness he might have presented that fact by affidavit, and have had it included in the bill of exceptions. In the absence of any such showing it is far from clear that the court erred in refusing to take from the jury the proofs in support of the second count.

The defendant also objected to the following instructions given by the district judge · in submitting the case to the jury: .

Fifth. " If you believe the evidence given in this case, in order to convict, the circumstances should be such as to produce nearly the same degree of certainty as that which arises from direct testimony, and to exclude a rational probability of innocence. The circumstances ought to be of such a nature 'as not to be reasonably accounted for on the supposition of the prisoner's innocence, but perfectly reconcilable with the supposition of the prisoner's guilt.

Seventh. " The term reasonable doubt is a term often used." (Quoting the definition given in *Commonwealth* v. *Webster*, and continuing.) " The jury must be satisfied from the evidence of the guilt of the defendant, beyond a reasonable doubt, before the jury can legally find him guilty of the crime charged against him; but in order to justify the jury in finding the defendant guilty of said crime, it is not necessary that the jury should be satisfied from the evidence of his guilt, beyond the possibility of a doubt. All that is necessary, in order to justify the jury in finding the defendant guilty, is that they shall be satisfied from the evidence of the defendant's guilt, to a moral certainty and beyond a reasonable doubt, although it may not be entirely proven that the defendant, and no other or different person, committed the alleged offense. And if the jury are satisfied from the evidence, beyond a reasonable doubt, that the defendant committed the crime charged against him, they are not legally bound to acquit him because they may not be *entirely satisfied* that the defendant, and no other person, committed the alleged offense." Both of these instructions were given and on appeal approved in the case of the *People* v.

*Cronin* (34 Cal. 191), and were, no doubt, copied from the report of that case. In regard to the first, the court said: "It was but another mode of telling the jury that, although as a general rule circumstantial evidence, in the nature of things, may not be so entirely satisfactory proof of a fact as the positive testimony of credible eye-witnesses, yet they must convict if they were satisfied of the guilt of the defendant to the exclusion of all rational probabilities. There are instances in which circumstantial evidence may be found to produce as strong a conviction of the defendant's guilt, if not stronger, than could be produced by the most direct and positive testimony; yet it is certainly true, as a general proposition, that the latter is the most satisfactory in the estimation of mankind. The court did but recognize this general principle while telling the jury that they were bound to find the defendant guilty upon circumstantial evidence, if it were of such a character as to satisfy them of his guilt, to the exclusion of any other rational theory, and in so doing the court seems to have adopted the precise language of the books. (1 Phillips on Evidence, tenth English and fourth American edition, 113 *et seq.*) If the same absolute certainty of conviction, which is generally produced by the direct and positive testimony of credible eye-witnesses, was required in cases of circumstantial evidence, verdicts of guilty would be rare, and murder frequently go unpunished. Where the evidence is entirely circumstantial, yet is not only consistent with the guilt of the defendant but inconsistent with any other rational conclusion, the law makes it the duty of the jury to convict, notwithstanding such evidence may not be as satisfactory to their minds as the direct testimony of credible eye-witnesses would have been."

This quotation from the opinion of Judge Sanderson shows in clear and forcible terms that the first instruction complained of was correct. In regard to the second, he merely says: "What has been said thus far is also a sufficient answer to the objections made to the charge of the court upon the subject of reasonable doubts, as we consider they amount to nothing more than hypercriticism."

In this part of the opinion also I heartily concur. But the supreme court of California afterwards became hypercritical. In the case of the *People* v. *Phipps* (39 Cal. 334), Judge Crockett, speaking for himself, said: "I concur in the judgment on the ground that the court erred in charging the jury 'that if they shall be satisfied from the evidence of the defendant's guilt to a moral certainty, and beyond a reasonable doubt, they must convict him, although they may not be entirely satisfied from the evidence that the defendant, and no other or different person committed the alleged offense.' The first branch of this instruction is a correct exposition of the law; but the latter clause of it is not only calculated to mislead the jury, but is repugnant to the first clause." This view he then proceeds to elaborate. In the case of the *People* v. *Padilla* (42 Cal. 540), the whole court adopt the foregoing opinion of Judge Crockett, and they reverse a conviction because they think a jury would be confused by the attempt to draw an impossible distinction between satisfaction beyond a reasonable doubt and entire satisfaction. For my part, however, I agree with Judge Sanderson that this is hypercriticism. If a man believes that a defendant may possibly be innocent, he cannot be said to be "entirely satisfied" of his guilt, and yet he may be satisfied of it beyond a reasonable doubt, and may convict, as Judge Crockett admits, and I cannot believe that any man capable of understanding the definition of a reasonable doubt would ever be confused by the statement of a distinction which is so manifest. (9 Nev. 118.)

The judgment of the district court is affirmed.