[No. 21158.   In Bank.—February 6, 1895.]

THE PEOPLE, RESPONDENT, v. FREMONT SMITH, APPELLANT.

CRIMINAL LAW — HOMICIDE — CONVICTION UPON CIRCUMSTANTIAL EVIDENCE.—A defendant may be convicted of murder upon circumstantial evidence, where the circumstances, taken together, are sufficient to uphold the verdict, and to stamp the defendant as the perpetrator of the murder.

ID.—CHAIN OF CIRCUMSTANCES — INDEPENDENT FACTS — REASONABLE DOUBT.—Where a defendant is accused of murder, and independent facts and circumstances are relied upon to identify the accused as the person committing the offense charged, each material fact or circumstance necessary to complete the chain or series of independent facts tending to establish the guilt, must be established to a moral certainty and beyond a reasonable doubt; and, if the jury have a reasonable doubt upon any single essential fact relied upon to complete the chain of circumstances, they cannot convict the defendant as long as they entertain such doubt.

ID.—MODIFICATION OF INSTRUCTION—PERSPICUITY.—An instruction properly embodying the law relating to circumstantial evidence should not, at the request of the defendant, be modified so as to involve and cloud it, or detract from its perspicuity.

ID.—EXPERT EVIDENCE — CHARACTER OF BLOOD — REFUSAL TO CAUTION JURY.—It is not error to refuse to instruct the jury that they should exercise caution in accepting the opinion of an expert as a fact proven in the case, when there was nothing apparent in the character of the expert witness, or his relation to the parties, or his manner of testifying, calculated to arouse suspicion as to his capacity, skill, or impartiality, and his testimony related to well-established, scientific facts as to the character of human blood, and as to measurements of corpuscles, indicating that the blood found upon the clothing of the defendant was that of a human being.

ID.—EVIDENCE — ARTICLES FOUND IN POSSESSION OF DEFENDANT — RES GESTÆ.—Articles found in the possession of the defendant at the time

of his arrest, when properly identified, are admissible in evidence where there is some evidence tending to show that a portion of them was the property of the murdered man, and they were so intimately connected with the case as to form part of the *res gestæ*.

ID.—PROOF OF KILLING OF ANOTHER PERSON.—The general rule, that in a criminal prosecution it is not permissible to prove that the defendant had committed crimes other than that with which he is charged, is subject to the exception that where two persons are killed at the same time and place, and apparently the same transaction, or approximately so, evidence as to the circumstances of the killing of one is admissible on trial under an indictment for the killing of the other.

ID.—DEATH OF ANOTHER ADMISSIBLE AS A CIRCUMSTANCE.—Evidence that another person living in the same house with the deceased was shot at the house, and one-half of his head blown off, and that parts of his skull and brains were found at the house, is admissible for the purpose of showing that his death occurred at that place, and that he could not have been the cause of the death of the other person whom defendant is charged with killing, it appearing that both bodies were placed in a stream at a distance from the house.

ID.—CROSS-EXAMINATION OF DEFENDANT—ARTICLES FOUND IN HIS POSSESSION.—Where, on the direct examination of the defendant, he testified explicitly that all of the articles taken by him upon leaving the house were his own, it is legitimate cross-examination to ask him any questions tending to show that the articles, or some of them, belonged to the deceased, or to sift defendant as to where he got them.

APPEAL from a judgment of the Superior Court of Colusa County.

The facts are stated in the opinion.

*Edwin Swinford*, for Appellant.

The court erred in the admission of testimony in regard to the circumstances of the killing of the man called Charlie, as it is well settled that no evidence can be introduced against the defendant respecting any other crime than that charged. (*People* v. *Gray*, 66 Cal. 274; *People* v. *Barnes*, 48 Cal. 551; *People* v. *Hartman*, 62 Cal. 562; *People* v. *McNutt*, 64 Cal. 116.) The court erred in allowing the defendant to be questioned upon cross-examination in regard to the articles found in his possession when arrested, as there was no testimony on that point in his direct examination. The scope of the cross-examination should be limited to matters brought out in the examination in chief. (*People* v. *Wong Ah Leong*, 99 Cal. 440.) The court erred in its modification

of the instruction asked for by the defendant relating to circumstantial evidence. (*People* v. *Phipps*, 39 Cal. 333.) The court also erred in modifying the two instructions requested by the appellant upon the subject of expert testimony, and in refusing to caution the jury as to the value and effect of such testimony. (*Grigsby* v. *Clear Lake Water Co.*, 40 Cal. 405.)

*Attorney General W. H. H. Hart, Deputy Attorney General Charles H. Jackson, District Attorney Ernest Weyand, and H. M. Albery, for Respondent.*

, The evidence, though circumstantial, was sufficient to sustain the verdict. (See *People* v. *Eckman*, 72 Cal. 584; *People* v. *Hardisson*, 61 Cal. 379; *People* v. *Cronin*, 34 Cal. 191; *Bailey* v. *Commonwealth*, 82 Va. 107; 3 Am. St. Rep. 87; *Fry* v. *Commonwealth*, 82 Va. 334.) The court properly allowed in evidence the articles found in the defendant's possession, as such was a part of the *res gestæ*. (9 Am. & Eng. Ency. of Law, 724, 725; *Drake* v. *State*, 75 Ga. 413; *State* v. *Stair*, 87 Mo. 268; 56 Am. Rep. 449.) The testimony as to the killing of the man called Charlie was properly admitted. It is settled that where two persons are killed at the same time and place, and apparently in the same transaction, or approximately so, evidence as to the circumstances of the killing of one is admissible on the trial of an indictment for the killing of the other. (Citing *Brown* v. *Commonwealth*, 76 Pa. St. 319; *Commonwealth* v. *Ferrigan*, 44 Pa. St. 386; *People* v. *Walters*, 98 Cal. 141. See *Fernandez* v. *State*, 4 Tex. App. 419; *Heath* v. *Commonwealth*, 1 Rob. (Va.) 735; *People* v. *Foley*, 64 Mich. 148; *People* v. *Cunningham*, 66 Cal. 669.) The questions asked the defendant on cross-examination were proper, as a wide latitude should be allowed in such cases as the one at bar. (*People* v. *Mullings*, 83 Cal. 138; 17 Am. St. Rep. 223.)

SEARLS, C. — The defendant, Fremont Smith, was convicted of murder in the first degree, and sentenced to suffer the extreme penalty of the law, for the feloni-

ous killing of one Dolph, at the county of Colusa, state of California.

The appeal is from the judgment and from an order denying defendant's motion for a new trial.

The first point relied upon by appellant for a reversal is that the evidence is insufficient to justify the verdict of the jury.

The defendant was the owner of a span of horses, harness, and buckboard wagon.

In the fall of 1893 he formed a partnership in the fishing business with two men, of whom but little seems to be known, except that they were fishermen, and that one was called " Charlie" and the other " Dolph."

The parties occupied a house in Moulton's pear orchard, adjoining the levee of the Sacramento river, county of Colusa. Charlie and Dolph did the fishing, and defendant, with his wagon, peddled the product about the surrounding country.

On or about December 27, 1893, defendant left the house in which the parties had been living and traveled with his team south.

Two days after he left, the dead bodies of Charlie and Dolph were found in the Sacramento river near the house in which they had lived. Charlie had been shot, a portion of his head being blown off, and Dolph had received fatal wounds upon and about the head, apparently from an axe or a similar instrument.

The door of their house was found locked, and upon a platform in front of the house a piece of human skull was found, portions of brains and blood.

From near the house to the river there was a trail of blood and evidence that a heavy body had been dragged, leaving a mark on the surface. The blood along the trail, and a pool of blood near the house, bore evidence of having been partially covered by earth being shoveled upon it. The small pits left in the ground from which earth had been taken to cover the blood showed that an instrument or tool had been used with a protuberance on the back of it.

Upon opening the house an axe was found within, which appeared as though washed since being used. No bedding was found, although the dead men were known to have had beds in the house.

Defendant was arrested at Collinsville, Solano county, on or about December 30, 1893, and on his person and wagon a large number of articles were found, among which were a shotgun, a gold watch and chain, a silver or nickel watch, a broken-handled shovel, six pair of blankets, half a dozen suits of clothes, two pair of gum boots, overalls, etc., etc.

The shovel, upon being returned to the scene of the tragedy and tested in the earth, was found to have a protuberance on its back making a similar mark to those found in the pits, and there was some evidence of a mark upon it resembling blood. The overalls were smeared with blood, which upon being analyzed by Professor Price, an analytical chemist, and examined microscopically, was pronounced to be human blood.

A portion of the clothing was too small for defendant, but might have fitted one of the deceased men who was much smaller. There were two keys to the house, one of which was found upon defendant, and the other in the pocket of the pants upon the body of Dolph.

The chain to the gold watch had been seen previously upon the person of Dolph. Upon a pair of old shoes found near the house, and admitted by defendant to be his, human blood was found.

There were many other circumstances of less importance tending to point to defendant as the guilty person; taken together they are believed to be sufficient to uphold the verdict and to stamp the defendant as the perpetrator of a most heinous murder.

Defendant asked the court to instruct the jury in the following language. The instruction was given as asked, except that portion included in brackets which was refused, and such refusal is assigned as error:

"When independent facts and circumstances are relied upon to identify the accused as the person com-

mitting the offense charged [and if together are regarded as sufficient basis for a presumption of his guilt to a moral certainty, yet] each material fact or circumstance necessary to complete such chain or series of independent facts, tending to establish the guilt, should be established to the same degree of certainty as the main fact which these independent circumstances, taken together, tend to establish; that is, each essential and independent fact in the chain or series of facts relied upon to establish the main fact must be established to a moral certainty and beyond a reasonable doubt; and, if the jury should then have a reasonable doubt upon any single essential fact relied upon to complete the chain of circumstances, they cannot convict the defendant as long as they entertain such doubt."

The instruction as given embodied the law relating to circumstantial evidence, and the necessity of the establishment of each independent fact essential to a conviction beyond a reasonable doubt, with great clearness.

The sentence eliminated tended to involve and cloud the instruction, without rendering it more favorable to the defendant. If the sentence in brackets did not conflict with the other portions of the instruction it at least detracted from their perspicuity and tended to draw the minds of the jurors from a careful analysis of the independent facts which it was the object of the instruction to invoke.

The case of *People* v. *Phipps*, 39 Cal. 333, cited by appellant, fails to support his contention.

In that case the court below refused to instruct the jury that in case of a reasonable doubt they should acquit. This court, in reversing the case, laid down the rule precisely in accord with the instructions given in this case. In this action of the court no error was involved.

Two errors are assigned upon the action of the court in eliminating from instructions asked and given for defendant upon expert testimony.

In the first the jury was instructed in substance that in considering expert testimony they should "weigh it

with all the other evidence in the case, but are not bound to determine any fact in accordance with the opinion of such expert, if not convincing, to the minds of the jury. The jury should weigh it carefully, and, if convincing, they have a right to act upon it, but they have a right to consider the conditions under which the testimony was given."

The portion omitted was as follows: "The facts upon which the opinion of the expert is based, and caution should be exercised by the jury in accepting the opinion of an expert as a fact proven in the case."

In the other instruction, which was quite favorable to defendant as given, the court struck out the words, "such evidence should therefore be received with great caution by the jury," and inserted in lieu thereof as follows: "After considering all these things, and any other circumstances in evidence, you are to give to such testimony (such weight) as you in your judgment think it entitled to," followed by the words: "If convincing, and carrying with it a belief in its truth, act upon it; if not, you have a right to reject it."

*Grigsby* v. *Clear Lake Water Co.,* 40 Cal. 396, is cited as authority for the contention that the court should have instructed the jury that "such evidence should be received with great caution by the jury."

In the case cited the court, speaking through Temple, J., spoke of the propriety of having expert witnesses selected by the court, of the necessity of their being impartial, as well as learned and skillful, and dwelt upon the fact that such witnesses are often but adroit advocates of the theory upon which the party calling them relies, etc.

That all of this, and much more that might be said of expert testimony in the abstract, is true, cannot be denied. It does not follow, however, that all that may be said by this court in discussing facts or comparing different kinds of testimony and determining their value is properly question of law to be submitted to a jury.

The reasons for a rule are not the rule itself. There

is a wide difference of opinion to be found in the cases upon the question of the propriety of cautioning the jury against the dangers and uncertainty of expert testimony.

Under our constitution, article VI, section 19, "Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law."

It may be plausibly argued that to direct a jury to look with caution upon a class of testimony, which experience has demonstrated to be subject to uncertainties, is not in effect to instruct them as to matters of fact, but rather as cautionary to the mode of reaching such facts.

Rogers, in his work on expert testimony, at chapter XI, has collected and cited a large number of cases bearing upon this point. We need not refer to them at length, for the reason that, whatever the conclusion reached might be, the case at bar is not one calling for the application of the caution contended for by appellant.

Professor Price was called as a witness for the prosecution, to prove that blood found upon the clothing of defendant was that of a human being. There was nothing apparent in the character of the witness, his relation to the parties, or his manner of testifying, calculated to arouse suspicion as to his capacity, skill, or impartiality.

His testimony was mainly as to facts, viz., the method resorted to for determining the character of the blood, the means by which it was separated, and the corpuscles or globules measured, their size and shape; the size and shape of the corpuscles found in the human family, in a variety of animals, fishes, etc., showing that the measurements indicated the corpuscles to come within the size found in the human family.

This evidence was mainly demonstrative of well-established scientific facts, which, with proper appliances and instruments, and perhaps some skill, is open to all. Conceding then, without deciding, that in a proper case the cautionary instruction contended for by appellant should

be given, there was nothing here to call for its expression.

Objection was made to the introduction in evidence of certain clothing, and a great variety of other articles found upon the person of defendant and upon his wagon at the time of his arrest.

They were properly identified and were properly admissible in evidence. There was certainly some evidence tending to show that a portion of them at least were the property of the murdered men, and, under the peculiar circumstances, constituted highly damaging circumstances against the defendant. They were so intimately connected with the case as to form a part of the *res gestæ.*

The fifth error assigned relates to the testimony admitted in regard to the killing of the man known as Charlie. The witness Jamison was questioned and his testimony admitted, showing blood stains upon the platform in front of the house, a portion of the skull and brains upon such platform, and one lobe of a human brain containing shot where it had fallen through a hole in the platform.

As Charlie was shown to have had a large portion of his head blown off, these vestiges tended to point to the place of his death.

The contention of appellant is that defendant, being charged with the murder of Dolph and not Charlie, it was error to admit testimony of the murder of another man.

It is true that in a criminal prosecution it is not permissible to prove that the defendant has committed crimes other than that with which he is charged. (*People v. Gray,* 66 Cal. 271; *People* v. *Barnes,* 48 Cal. 551; *People* v. *Hartman,* 62 Cal. 562; *People* v. *McNutt,* 64 Cal. 116.)

There are exceptions to the rule stated, which arise in cases where the intent or guilty knowledge is an element to be established, as in the case of uttering forged bills, etc., but they in nowise alter the general rule.

Another exception to the rule is said to be that, where two persons are killed at the same time and place, and apparently in the same transaction or approximately so, evidence as to the circumstances of the killing of one is admissible on the trial under an indictment for the killing of the other. (*Brown* v. *Commonwealth*, 76 Pa. St. 319; *Commonwealth* v. *Ferrigan*, 44 Pa. St. 386; *Fernandez* v. *State*, 4 Tex. App. 419; *Heath* v. *Commonwealth*, 1 Rob. (Va.) 735; *People* v. *Foley*, 64 Mich. 148; *People* v. *Rogers*, 71 Cal. 565; *People* v. *McGilver*, 67 Cal. 55; *People* v. *Walters*, 98 Cal. 141.) We have no doubt of the soundness of the exception last mentioned.

There was, however, in the present case a more cogent reason for the introduction of the proffered testimony. Dolph and Charlie were living in the same house, in apparently an isolated place, and were left there by defendant, alive and well, according to his statement.

Under these circumstances it might have appeared quite probable to the jury that Charlie, and not the defendant, it was who killed Dolph and threw his body in the river. This was met by showing that Charlie too was killed, and his body also placed in the stream.

2. Conceding this to be true, Charlie might still have killed his partner and then committed suicide. This last theory was met by showing that Charlie was shot at the house, one-half of his head blown off, a part of his skull and one lobe of his brain being found there, thus showing that his death occurred at that point, and hence that he could not have gone to the river where the body was found.

In this point of view the evidence was highly important and eminently proper. It should also be remarked that the evidence went to show that Charlie *was killed,* and not that defendant *killed him.*

Defendant offered himself as a witness on his own behalf, and on cross-examination was interrogated in regard to the articles found in his possession when arrested at Collinsville. This was proper. On his direct examination he had testified explicitly that all the stuff

he took upon leaving the house was his, that the bed was his, the tent, the gold and silver watches, etc., and that he was particular to take nothing that was not his own, and that when he left the boys' (Charlie and Dolph) things were in the house.

In response to this it was legitimate cross-examination to ask him any questions tending to show that the articles or some of them belonged to Dolph, or to sift him as to where he got them.

There is no error in the record calling for a reversal, and the judgment and order appealed from should be affirmed.

VANCLIEF, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed, and the cause remanded with directions to the superior court to take the proceedings necessary for the enforcement of its judgment.   McFARLAND, J.,   HENSHAW, J.,
GAROUTTE, J.,   HARRISON, J.,
VAN FLEET, J.,   TEMPLE, J.,
BEATTY, C. J.