[Crim. No. 105.   Third Appellate District.—November 9, 1909.]

## THE PEOPLE, Respondent, v. R. E. CAHILL, Appellant.

CRIMINAL LAW—GRAND LARCENY—STEALING OF AUTOMOBILE—SUPPORT OF VERDICT—CIRCUMSTANTIAL PROOF—PRÉSENCE AT PLACE OF THEFT—POSSESSION—CONFESSION.—Upon the trial of a defendant charged with grand larceny in the stealing of an automobile left at a garage in Sacramento by the owner for the night, which could not be found at 9 o'clock the next morning, evidence that the defendant was seen at the garage at 5 o'clock of that morning, and was afterward found in possession of the automobile in Oakland and San Francisco and gave an untruthful account of the origin and extent of his possession thereof, was sufficient to support the verdict independently of his confession, which, in itself, was enough to persuade the jury of his guilt, and justify the verdict returned.

ID.—PROOF OF CORPUS DELICTI.—The *corpus delicti* was fully proved without the aid of the defendant's confession. It consisted in the asportation of the machine from the garage by some one, manifestly without the consent of the owner or of the manager of the garage.

ID.—INSPECTION OF AUTOMOBILE BY COURT AND JURY—CONSENT OF COUNSEL—ORDER OF COURT—LAWFUL PROCEEDING—EVIDENCE NOT TAKEN.—Where, at the trial by express consent of counsel for both sides, the court made an order for inspection of the automobile by the jury in front of the courthouse, which was lawfully conducted under the control of the judge, and in presence of the judge, counsel, court stenographer, and an officer in charge of the jury, and no evidence was actually taken out of court, beyond the legitimate scope of such inspection, defendant cannot claim that such inspection was the taking of evidence out of court.

ID.—EVIDENCE—DRIVING GLOVES LEFT IN AUTOMOBILE BY OWNER—POSSESSION BY DEFENDANT—CIRCUMSTANCE TENDING TO SHOW LARCENY CHARGED.—Where the owner of the machine testified that he left driving gloves in his automobile left by him at the garage, and identified the same as those found in the possession of the defendant when he was arrested, the court properly allowed such proof, and admitted the gloves in evidence, as part of the same transaction connected with the larceny charged as not only tending to show defendant's guilty knowledge, but also as a circumstance tending to show that defendant stole the machine.

ID.—DIFFERENT OFFENSES COMMITTED AT SAME TIME AND PLACE—ADMISSIBILITY OF CRIME NOT CHARGED.—Where an accused person has committed two offenses at the very same time and place, so that they constitute the same, or approximately the same, transaction, evidence of the crime not charged is admissible if it tends to show motive or any other fact relevantly bearing upon the crime charged.

Id.—Confession Properly Admitted.—Where the evidence offered on the question of the admissibility of the confession of guilt made by the defendant tended to show that it was freely and voluntarily made, without inducements or threats held out to him, it was properly admitted in evidence.

Id.—Competency of Confession a Question of Law—Evidence Assailing It After Ruling Inadmissible.—The question whether a confession has been obtained under such circumstances as to render evidence thereof competent or incompetent is one of law for the court; and when the court has ruled that it is competent and admissible and has received the same in evidence, subsequent testimony offered by the defendant to show that it was inadmissible because not freely and voluntarily made, but was wrung from him, was properly excluded.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order denying a new trial. J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

A. B. Reynolds, for Appellant.

U. S. Webb, Attorney General, and Eugene S. Wachorst, District Attorney, for Respondent.

HART, J.—The defendant was convicted of the crime of grand larceny under an information charging him with that offense, and he presents this appeal from the judgment of conviction and the order denying him a new trial.

The points urged for a reversal are: 1. That the evidence is insufficient to support the verdict; 2. That the jury received evidence out of court; 3. That the court erroneously permitted proof of another and distinct offense than that charged; 4. That the alleged confession of the accused was not free and voluntary, and that, therefore, evidence thereof was erroneously admitted; 5. That the court erred in excluding certain testimony offered by the defendant.

It appears from the record that on the twenty-ninth day of April, 1909, one H. C. Keyes, a citizen of the city of Sacramento, was the owner of an automobile, which bore the number 320, and on the evening of said day, at about the hour of 9 o'clock, he drove the machine into a garage in said city

to be kept there for the night. On the following morning—April 30th—at about the hour of 9 o'clock, Keyes called at the garage for the machine and it was then discovered that the "auto" was not there, it having been taken away. No one connected with the garage appeared to know where the machine was or just at what hour or in what manner or by whom it was taken from said garage. Investigation failed to throw any light on the whereabouts of the machine or on the mysterious circumstances by which it was taken from the garage until the thirtieth day of May—a month later—when it was found in the possession of the defendant at the Oakland mole.

1. The evidence sufficiently sustains the verdict. It was proved that the defendant was seen by the witness Tanquary near the hour of 5 o'clock on the morning of the 30th of April in the garage from which the car was taken. There was no other person in the garage at that time. Tanquary had taken his machine there for the purpose of having some repair work done on it prior to taking a trip to Stockton, where he contemplated going in his machine the next day. He intended to leave his machine in the garage, but could find no empty stall or aisle in which to place it. The defendant told Tanquary that the man in charge was asleep, and asked if there was any word he desired to leave. Tanquary replied in the negative and then left the garage.

On the 30th of May, 1909, one Gifford, an expert inspector of automobiles, drove to the Oakland mole in a machine, intending to take the boat for San Francisco. At the "mole" he saw the defendant in possession of the stolen car. Both Gifford and the defendant crossed the bay with their machines on the same boat. After reaching the San Francisco side, the defendant left the boat in the machine he had charge of and Gifford followed him. After following the defendant some distance, Gifford saw two policemen at some point on Clay street. He informed the policemen that the defendant had in his possession the stolen car, and they boarded Gifford's machine and followed the defendant to Montgomery avenue and Union street, where the latter stopped. When Gifford's car reached the point where the defendant had stopped Gifford said to the policemen, pointing to the "auto" in the possession of the defendant: "This

machine has been stolen from Sacramento; I wish you to hold it.''

The defendant was questioned by the officers concerning the circumstance of his possession of the machine, and explained that he had been driving the car for a couple of weeks for a lady named Mrs. Consels, residing at Fruitvale, Alameda county. Subsequently, the defendant, accompanied by Detective Andrew J. Gaughram, of the San Francisco police department, went to the home of Mrs. Consels, in Fruitvale. There the detective found the wife of the defendant and her mother. What occurred at the house of Mrs. Consels may best be told in the language of the detective: ''I asked the lady in question [defendant's mother in law] how long this man [defendant] had been employed by her, and she replied about eight weeks. I asked her, 'Where did you get that machine?' She says, 'I traded a Winton for it.' I says, 'Where?' She said in Fresno.'' The witness then asked her if she had a bill of sale for the machine, and she replied that she had, but that it was in the ''safe deposit vaults.'' The detective continued: ''I further asked her, 'You would know the man who exchanged machines with you again, if you would see him, would you not?' She says, in a kind of a bewildered way, 'I don't know.' She says, 'I never saw him.' I says, 'Who did make this exchange?' She pointed to Mr. Cahill and says, 'Mr. Cahill made the exchange.' ''

Very readily it will be observed that the people presented evidence, independent of that of the confession of the accused, which, in itself, was enough to persuade the jury of his guilt and to justify the verdict returned. The opportunity for the theft of the machine by the defendant as shown by the fact of his presence at the garage from which it was taken at an early hour of the morning it was missed, his subsequent possession of the machine, his untruthful statement to the detective that he had been driving the machine for only two weeks for a lady at Fruitvale, and the story which he had evidently told the ''lady of Fruitvale,'' who proved to be his mother in law, that he had exchanged her car for the one stolen, constituted circumstances of the most incriminatory significance. The further claim of counsel for appellant that the *corpus delicti* was not shown by these circumstances is, as is patent, with-

out any foundation whatever. The *corpus delicti* consisted of the asportation of the machine. There can, of course, be no doubt that the evidence, independent of that of the confession, shows that the car was taken from the garage by some one, and that there is no pretense that it was shown that it was taken with the consent of either the owner or the manager of the garage, is a proposition equally as free from doubt, so far as the record discloses. In other words, the irresistible inference from the circumstances proved, independently of the evidence of the confession, is that the "auto" was wrongfully and feloniously taken from the garage, and hence the *corpus delicti* was clearly established without the aid of the confession.

2. There is absolutely no showing, or even an attempt at showing, that the jury received evidence touching the question at issue out of court. The court, by the express consent of counsel on both sides, made an order allowing the jury to view and inspect the car alleged to have been stolen. The machine was standing near the courthouse at the time of the inspection, which was conducted under the control and in the presence of the judge, as well as in the presence of the attorneys on both sides and the court stenographer, and the jury were in charge of an officer at the time. (Pen. Code, sec. 610.) The record does not show that this proceeding was in any respect extended beyond its legitimate scope by any act or word of either the jurors or the judge or other officers. To the contrary, the inspection appears from the record to have been conducted strictly in accordance with the requirements of the law.

3. Nor is there any merit in the contention that the court allowed proof of another and different crime from the one charged in the information. At the time the automobile was stolen a pair of gloves, used by the owner when driving the machine, was in the car. These gloves were found in the possession of the defendant at the time of his arrest. Mr. Keyes, owner of the machine, identified the gloves as those used by him when operating the car and which, he testified, he had left in the car on the night of April 29th, the last time that he saw the machine until after it had been found in the possession of the defendant. The court properly allowed proof of the ownership of the gloves and admitted

11 Cal. App.—44

them in evidence as a circumstance tending to connect the defendant with the commission of the theft. The specific purpose of the proof was to show guilty knowledge. It is true that the general rule is that evidence of a different and distinct crime from the one charged cannot be admitted against a defendant, but there are exceptions to that rule. Where an accused commits two offenses at the very same time and place, so that they constitute the same, or approximately the same, transaction, evidence of the crime not charged is admissible if it tends to show motive or any other fact relevantly bearing upon the crime charged. (*People* v. *McGilver,* 67 Cal. 55, [7 Pac. 49] ; *People* v. *Rogers,* 71 Cal. 565, [12 Pac. 679] ; *People* v. *Walters,* 98 Cal. 141, [32 Pac. 864] ; *People* v. *Smith,* 106 Cal. 81, [39 Pac. 40].) The theft of the gloves in the case at bar was a part of the same transaction involving the larceny charged against the defendant, and, as stated, evidence that the gloves had been left with the machine by the owner when he last had possession of the car, and that they were found in possession of the defendant when arrested, was competent and admissible as a circumstance tending to show that he stole the machine.

4. Evidence of the confession of the defendant was properly admitted.

The detective to whom, in the presence of others, the defendant confessed his guilt, testified that before any statement was made by the accused involving an admission of guilt the latter was fully informed of his rights; was told that any inculpatory statement he might make would be used against him at his trial; that no inducements holding out to him hope for a light punishment or for clemency were suggested, nor was the prisoner threatened or intimidated into making a confession or a statement of any character. The detective testified that, after the prisoner was thus fully apprised of his rights and in effect assured that he could or could not make a statement, according to his own pleasure, he (defendant) said, "It doesn't make any difference; I am up against it," and then proceeded to explain the circumstances under which he stole the machine. We have been unable to find anything in the testimony of the witnesses detailing the circumstances under which the confession was made indicating that it was not free and voluntary.

5. It is insisted that the court erred in sustaining objections to testimony sought to be introduced by the defense for the purpose of contradicting the witness Gaughram as to what occurred just prior to the confession of guilt by the defendant. The latter's wife was asked questions, the answers to which, assuming that they would have been favorable to the defendant, would have merely tended to show that the confession was wrung from the prisoner by the detective, and that it was therefore not free and voluntary. The court ruled that the testimony should have been offered when the question whether the confession was voluntary or not was before the court, and that it could serve no purpose whatsoever after the confession had been admitted. The ruling of the court upon the proposition was eminently proper. The question whether a confession has been obtained under such circumstances as to render evidence thereof competent or incompetent is purely one of law, and its determination committed exclusively to the court, and, obviously, testimony bearing upon that question alone and having no material relevancy, either directly or indirectly, to the main issue is inadmissible where it is offered after the question of the admissibility of evidence of the confession has been decided.

We have carefully examined the record, and are warranted in saying that it is worthy of special remark that in the trial of the cause both the court and district attorney displayed commendable solicitude for the rights of the prisoner as well as for those of the people, and that the appellant was, therefore, accorded a fair and impartial trial.

The judgment and order are affirmed.

Chipman, P. J., and Burnett, J., concurred.