Speak, J.
The errors complained of relate principally to the refusal of the court to allow full cross-examination of the state’s witnesses, and to the charge of the court to the jury.
I. As to the cross-examination. Benjamin Tremaine, called by the state, testified in chief that he was acquainted with Morgan ; that while the robbers were in the house the evening of the robbery one of the men stood near the lamp, and while there his mask dropped down, and he (witness) recognized him, and knew him to be Morgan. In answer to a question put by prisoner’s counsel the witness testified that he knew three of the robbers. The counsel then asked what three he knew. To this the state objected. The court sustained the objection and refused to permit the witness to answer. Similar questions were asked of other witnesses for the state who had testified that they recognized Morgan. *373 Like objections were sustained, the court holding that “ the witness should give the name of the family who were present, but that he should not mention the names of the other robbers he may have recognized.”
It is difficult to perceive any valid ground for the refusal to allow the questions put in cross-examination to be answered. The charge against Morgan was that he, with others, committed the robbery. The theory of the state’s case was that the crime was the joint act of several. To maintain this theory the state gave evidence of the presence of several persons, and of their acts and declarations. These acts and declarations constituted the thing done — the robbery. The right of cross-examination extends in all cases to all matters connected with the res gestae. Wharton’s Evidence, sec. 529; Martin v. Elden, 32 Ohio St. 282. It was; perhaps, not incumbent on the state to prove identification of any of the alleged robbers save Morgan, but it was the right of the defendant to know, in detail, not only what was done, but, so far as cross-examination would elicit it, who did it, as well as who were present at the time. The effect of the proof of the identification of Morgan might have been materially impaired by statements of the witnesses as to the identification of others, but whatever the probable result, the defense had the right to make the effort. Such cross-examination would have been a test of the accuracy, truthfulness and credibility of the witnesses as to their testimony generally, and especially as bearing upon their identification of Morgan.
The ruling is sought to be justified on the ground that the identity of those persons other than Morgan was immaterial, and that the inquiry as to their identity would have unduly prolonged the trial, and led to a trial, in the Morgan case, of the guilt of the others who might have been identified. We have already commented on the materiality of the attempted cross-examination. As to the other objection it is sufficient answer to say that the right of a party to a fair cross-examination is not to be determined by considerations of convenience, nor is that right to be curtailed because such *374 cross-examination, and pertinent evidence following it, might have tended to show that persons other than the one on trial, charged in the same indictment, are or are not guilty. And no reason is perceived why the defense would not have had the right to endeavor further to discredit the testimony of the witnesses for the state by offering proof contradictory of their statements as to the presence and participation of persons other than Morgan at the Oman house that evening.
It is urged that the question is not before this court because the objection is not made in the motion for a new trial. One ground stated in the motion is “ that the court erred in the refusal to admit testimony to go to the jury which was offered by the defendant.” This assignment is quite general, but we think that, giving to it that liberal construction Which courts give to language in aid of justice in criminal cases, it should be held sufficient. The offer was to elicit evidence from the state’s witnesses. The court excluded it, and exception was duly entered. Had the counsel stated what he expected to prove, no one, we presume, would doubt that the assignment in the motion would be broad enough to cover it. We cannot see that, in principle, the case is any different by reason of the fact that no such statement was made, for in cross-examination it is not incumbent on the counsel to disclose what he expeots to prove. Martin v. Elden, supra.
We are also of opinion that the cross-examination of the prosecuting witness in regard to an attempt to procure a confession from Morgan, and the employment of Frey for that purpose, should have been permitted. The conduct of a prosecuting witness looking to the discovery of the criminal after the commission of the alleged offense, is always a proper subject of inquiry by the defense. Such inquiry often throws light upon the state of mind and animus of the prosecutor, and serves to test his standing as a witness and the value of his testimony in chief, and the good faith of the prosecution. Within reasonable limits it should be permitted.
2. As to the charge to the jury. Of the many exceptions *375 to the charge, some, we think, are well taken, and while the court might not feel compelled to reverse the judgment of conviction on the charge alone, yet as the case will go back for a new trial, it may be worth while to briefly call attention to some of the objectionable features.
We suppose it to be a settled rule that all facts in issue must be determined by the jury. A party on trial may directly admit facts necessary to the state’s case, and when that is done such facts may be regarded as undisputed. But where a defendant disclaims knowledge as to the truth or falsity of facts essential to the case of the state, it does not follow that they are admitted, or that they are undisputed, because the effect of the plea of not guilty is to put in issue all facts not distinctly admitted. Though no witness has denied the particular facts, yet the plea of not guilty is, in legal contemplation, a denial of them.
The court, in the charge, said to the jury “ that the uncontradicted evidence in the case shows that on February 7, 1889, at the county of Hancock, one Joshua Oman was a farmer living on his farm in Eagle township; that there resided with him at that time Henry Oman and John Oman, his two sons, who were bachelors; also his son, Wesley Oman, with his wife and two little children; also a young man named Benjamin Tremaine. On the evening of said 7th day of February, 1889, Joshua Oman, with his family of children, sons and grandchildren, were sitting around their fireside in the peace and quiet of their country home, when suddenly, without warning, seven men with masks on their faces, a revolver in one hand, and a club in the other, broke in upon that quiet, seized and bound each and all of them, placed revolvers at their heads, with threats demanded their money; searched and ransacked bureaus, trunks, and all places where it was thought money might be concealed. John Oman, who sprang for the gun, was fired at. One of them stood by Wesley Oman with drawn revolver at his head, while others searched his pockets, and took therefrom the' sum of one hundred and fifty dollars. So far the evidence is uncontradicted.”
*376 It is altogether probable that the jury in this case would have agreed with the judge, without direction, that the facts stated by him were conclusively shown. Yet the defense had introduced testimony tending to show contradictory statements on the part of some of the state’s witnesses, especially as to the identity of the participants, which, to a greater or less degree, tended to weaken the force of all their statements, and it was the right of the defendant to endeavor, by all legitimate argument, as well as by cross-examination, to create a doubt in the minds of the jurors, and it was the province of the jury, and the jury alone, to determine whether or not a crime had been committed, and if it had been, the time of it and the manner of it, as well as who were the perpetrators.
It is insisted that the charge in this particular is sustained by the holding of this court affirming the judgment below in the recent case of Whiting v. The State, ante 220. We think not. In that case the judge, in commenting on an admission made by a witness for the state in open court, before the jury, remarked in the charge that the witness “ admits her complicity in the crime.” The expression may not have been an entirely happy one, but the court submitted the witness’ entire statement to the jury with the instruction “ that such evidence should be cautiously received and closely scrutinized.” There is no parallel in the two cases.
It is urged as error that in defining the term “reasonable doubt” the court said to the jury: “By ‘reasonable doubt’ is meant not a captious or whimsical doubt, but a doubt that you as a juror can give a reason for.” This objection does not impress us as of the highest consequence. Yet, as the point is made, we take occasion to say that the last clause of this instruction appears to be inaccurate. What kind of a reason is meant? Would a poor reason answer, or must the reason be a strong one ? Who is to judge ? The definition fails to enlighten, and further explanation would seem to be needed to relieve the test of indefiniteness. .The expression is, also, calculated to mislead. To whom is the reason tobe given? The juror himself ? The charge does not *377 say so. And jurors are not required to assign to others reasons in support of their verdict. The correctness of this definition is doubted in People v. Stubennoll, 62 Mich. 329, and in Rhodes v. State, (Indiana,) 27 N. E. Rep. 866, and held erroneous in Cowan v. State, 22 Neb. 519, and in Carr v. State, 23 Neb. 749. It is not easy to define, in a few words, what a reasonable doubt is, and, in some jurisdictions, it is deemed good practice not to attempt any explanation. In this state it is common to define the term. When it is attempted, the explanation should be an accurate one. Perhaps no more satisfactory definition is to be found than that given by Chief Justice Shaw, in the Webster Case: “It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge.” The definition given by Birchard, J., in Clark v. The State, 12 Ohio, 483, is also well established as a safe one, and its sufficiency is not impaired by its age. It is safe to follow established precedents.
A further objection to the charge is, that, in summing up, the court gave undue prominence to certain portions of the evidence on the part of the state, and gave little or no attention to evidence contra on the part of the defendant. Many of the objections argued seem trivial. Some, however, we think are substantial, but space forbids a detailed examination of the charge in these particulars. We assume it to be the law, that, while it is not, in this state, the duty of the trial judge to sum up the evidence to the juiy, yet it is not improper to do so providing it is fairly done, and all the material evidence on both sides is fairly presented. The judge should not single out isolated parts of the testimony, and instruct as to the law arising on the facts which such testimony tends to prove, nor give undue prominence to certain portions of it, and especially ought he not to review with emphasis only those facts which have a tendency to establish one side of the case. When one single fact is selected and strongly commented on, the tendency is to distort *378 its importance in the estimation of the jury, and to concentrate attention too intently upon it, to the undervaluing of the rest of the evidence. Thompson on Charging the Jury, p. Ill, and cases cited.
An examination of the charge indicates that this wholesome rule was, through inadvertence it is presumed, not fully observed in the trial of this case. A suggestion of the rule by this court is doubtless all that is necessary to secure a full observance of it at another trial.
If the state’s witnesses truthfully told the occurrences of February 7, at the Oman homestead, a highhanded outrage was committed; one calculated to cause much excitement and just indignation in the community, which would naturally be shared, to a greater or less extent, by the jury, as the incidents were related from the witness stand. In such cases a special duty devolves upon the trial court to conduct the trial in such manner that the excitement and indignation shall not work injustice to the defendant, and deprive him of a right the constitution and the laws guarantee him, viz.: a fair trial. And where, from the record, it is apparent to a reviewing court that the case has been so conducted that a fair trial has not been had, it becomes the duty of that court to reverse the judgment.

Judgment reversed.