ED. CARR, PLAINTIFF IN ERROR, v. THE STATE OF NE-
　　BRASKA, DEFENDANT IN ERROR.

1. Criminal Law: MURDER: EVIDENCE. On a trial for mur-
der, a witness for the state stated in detail the circumstances
surrounding the tragedy immediately after the killing ; that
the deceased was lying upon the ground, and the accused stand-
ing near by with a gun in his hand, and that he, very soon
thereafter, walked away carrying the gun. He was then asked
by the prosecuting attorney why he did not arrest or assist in
arresting the accused. Over the objection of the accused, the
witness stated that the reason why he did not attempt the arrest
was, that he did not think it safe to follow him. *Held*, Error.

2. ———: EVIDENCE: THREATS. As a general rule, threats made
by the defendant prior to the murder, to kill or injure some other
person than the deceased, are not admissible as evidence against
him.

3. Instructions. It is not error for the court to refuse to repeat
an instruction to the jury already substantially given.

4. Criminal Law: EVIDENCE: REASONABLE DOUBT. The
guilt of an accused is proven beyond a reasonable doubt when,
upon the entire comparison and consideration of all the evidence,
the minds of the jurors are in that condition that they can say,
from the evidence, they have and feel an abiding conviction, to
a moral certainty, of the truth of the charge. A reasonable
doubt does not consist of possible or conjectural doubts, not
growing out of the evidence, but is one which, when considering
the evidence alone, leads the juror to hesitate, and upon which
he would refuse to act in the important concerns of life. It is
error to charge a jury that it is a doubt for the having of which
the juror can give a reason derived from the testimony.

5. ———: TRIAL: ARGUMENTS OF COUNSEL. Where a defend-
ant is on trial upon an indictment charging him with murder
in the first degree, the county attorney having made the opening
argument to the jury, after the testimony is adduced, whether the
counsel for the accused can cut off further argument by refusing
to address the jury, *quære.*

6. ———: IMPARTIAL TRIALS. Every person accused of the com-
mission of a crime is guaranteed a fair and impartial trial by the
constitution. This right should be carefully protected by trial
courts, and conduct of attorneys and all others which prevents

such a trial should not be permitted by the courts in which the trial is had. .

7.    ———: ———: MALICE. "A clear, concise, and comprehensive definition of legal ' malice,' though often attempted, has not been fully achieved. Approximately, it is that condition of the mind which shows a heart regardless of social duty, and fatally bent on mischief, the existence of which condition is inferred from acts done or words spoken." *Harris v. The State,* 8 Tex. App., 91.

ERROR to the district court for Boone county. Tried below before TIFFANY, J.

*James S. Armstrong* and *W. M. Robertson,* for defendant in error.

Instructions asked for on question of intoxication should have been given. *Smith v. State,* 4 Neb., 288. *State v. Westfall,* 49 Iowa, 328. Premeditation and deliberation not shown. *Milton v. State,* 6 Neb., 137. *Schlencker v. State,* 9 Id., 241. *Craft v. State,* 3 Kan., 450. Threats. *People v. Bezy,* 67 Cal., 223. *Clarke v. State,* 78 Ala., 474. Reasonable doubt. *Cowan v. State,* 22 Neb., 519. Argument. *Borden v. Briscoe,* 36 Mich., 255.

*William Leese, Attorney General,* for the State.

REESE, CH. J.

Plaintiff in error was indicted at the May, 1887, term of the district court of Boone county, for the murder of Warren Long, on the 5th day of April of the same year. On the 21st of June he was placed upon trial, and on the 25th day of the same month the jury returned a verdict by which he was found guilty of murder in the first degree. On the 12th of July a motion for a new trial was overruled, and sentence of death was pronounced against him.

A number of assignments of error are made in the motion for a new trial and petition in error, but they need not all be noticed, as, upon the case being called in this court, the attorney general declined to file a brief, stating that the judgment would have to be reversed on account of an erroneous instruction having been given to the jury by the trial court. It is presumed that many of the questions presented by this record will not arise upon a subsequent trial, and, in addition to the instruction referred to, we will notice a part only of the questions presented by the brief of the plaintiff in error.

The instruction referred to is as follows:

"4. You are instructed that, by a reasonable doubt is meant such a doubt as naturally arises in the mind of a juror, from a consideration of the testimony, as would cause him to pause and hesitate before acting in the most important affairs of life. It is a doubt having a reason for its basis derived from the testimony, and a doubt for the having of which the juror can give a reason derived from the testimony. To be convinced beyond a reasonable doubt, is to have the judgment, the reason, and the understanding satisfied of the truth of the facts, so that an ordinarily reasonable and cautious man would unhesitatingly act by the proof in the most vital and important affairs of human life. And unless in this case your judgment and reason and understanding is so convinced, by the testimony, of every fact necessary to constitute any of the degrees of the crime as defined in these instructions, you must acquit the defendant."

While not couched in exactly the same language, this instruction is, in substance, the same as the third instruction given to the jury and referred to in *Cowan v. State*, 22 Neb., 519.

The clause contained in the instruction in that case which induced this court to reverse the judgment was, "It is a doubt for having which the jury can give a reason based

upon the testimony." In the case at bar the language is, "It is a doubt having a reason for its basis, derived from the testimony, and a doubt for the having of which the jury can give a reason derived from the testimony."

We have again examined the question, and are satisfied with the holding in *Cowan v. State*. It is true that the instruction is not entirely without support, and may be found substantially in Sackett on Instructions to Juries, at page 482, but upon an examination of the authorities cited by the author, we do not think they support the text. We have not at hand the edition of Greenleaf's work on evidence referred to, but upon examination of the 14th edition we are satisfied Sec. 29, note 2, of that edition, is the one referred to by the author. In the text, Greenleaf says: "But in criminal trials the party accused is entitled to the benefit of the legal presumption in favor of innocence, which in doubtful cases is always sufficient to turn the scale in his favor. It is, therefore, a rule of criminal law that *the guilt of the accused must be fully proved*. Neither a mere preponderance of evidence nor any weight of preponderant evidence is sufficient for the purpose, unless it generate a full belief of the fact, to the exclusion of all reasonable doubt." The note consists, in part, of an extract from the very able charge of Chief Justice Shaw, given to the jury on the trial of the case of *Commonwealth v. Webster*—reported in 5th Cushing, 320; 52d Am. Decisions, 711—as well as a number of extracts from decisions in other cases. The quotation from the instructions is as follows: "Then what is a reasonable doubt? It is a term often used, probably pretty well understood, but not easily defined. It is not mere possible doubt, because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding

conviction, to a moral certainty, of the truth of the charge. The burden of proof is upon the prosecutor. All the presumptions of law, independent of evidence, are in favor of innocence, and every person is presumed to be innocent until he is proved guilty. If, upon such proof, there is reasonable doubt remaining, the accused is entitled to the benefit of it by an acquittal; for it is not sufficient to establish probability, though a strong one, arising from the doctrine of chances, that the fact charged is more likely to be true than the contrary; but the evidence must establish the truth of the fact to a reasonable and moral certainty—a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it. This we take to be proof beyond a reasonable doubt; because if the law, which mostly depends upon considerations of a moral nature, should go further than this, and require absolute certainty, it would exclude circumstantial evidence altogether."

While the rule stated by Chief Justice Shaw was applied to a case depending upon circumstantial evidence, yet in the main we think it is applicable to all cases where the issue of the guilt or innocence of the accused is presented. The reasonable doubt is, "that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge." All presumptions of law, independent of evidence, are in favor of innocence. Every person is presumed to be innocent until he is proved guilty. The burden of proof is upon the prosecution, not only to remove this presumption, but to satisfy the minds and consciences of the jurors beyond all reasonable doubt of the guilt of the accused, upon the whole case. They must *feel* satisfied to a moral certainty of his guilt, or they must acquit, at least of the degree wherein this want of certainty exists.

48

An instruction, substantially like the one given in the case at bar, was given by Judge Speer in the *United States v. Jones*, 31 Fed. Rep., 718, and in the *United States v. Jackson*, 29 Id., 503, but we do not believe they correctly state the law.

In *People v. Steubenvoll*, 28 N. W. Rep., 883, the supreme court of Michigan seems to concede that the language of an instruction similar to the one under consideration was not strictly accurate, but held that it produced no practical consequence in the case.

In *Brown v. The State*, 5 N. E. Rep., 900, the supreme court of Indiana refused to approve an instruction that the doubt of the defendant's guilt must arise out of the evidence, and be such as to cause a prudent man to hesitate before acting, etc. The court says : " It is not the law that, in order to justify an acquittal, the doubt must arise out of the evidence, and be such as to cause a prudent man to hesitate. The doubt may arise from the want of evidence. In order to justify a conviction, the evidence must be such as to produce in the minds of prudent men such certainty that they would act upon the conviction produced without hesitation in their own most important affairs."

We have examined many of the definitions of " a reasonable doubt," and we are persuaded that none of them are better or more exact than that of Chief Justice Shaw, in the case of *Commonwealth v. Webster*. We are therefore content to leave the definition substantially as there found.

In examining the other instructions given to the jury, our attention is directed to instruction number five. It is as follows:

" 5.   You are instructed that, under our statute, to constitute murder in the first degree, the jury must be satisfied beyond a reasonable doubt, from the evidence, that the defendant, without any justifiable cause or excuse, killed

the deceased in manner and form as charged in the indictment; and they must also be satisfied beyond a reasonable doubt, from the evidence, that he killed the deceased purposely and of deliberate and premeditated malice. And you are instructed that, by premeditation and deliberation, is meant to think of, to revolve in the mind beforehand, to contrive, to design previously, to weigh in the mind, to consider and examine the reasons for and against, to consider maturely, to reflect upon. The defendant, in order to be guilty of this degree of crime, must have first formed the purpose in his mind to kill the deceased, and having formed that purpose, he must have deliberated upon it. He must have considered the consequences of his act, and then, with full knowledge of the consequences of the act about to be done, he purposely and maliciously executed that purpose by slaying the deceased. By malice is meant the doing of a wrongful act intentionally, without just cause or excuse."

The definition of malice, contained in the latter clause of this instruction, is, we think, hardly sufficient. It is a copy of the first clause of the first paragraph of the definition of malice given by Bouvier in his dictionary. The paragraph referred to in the definition is as follows:

"The doing of a wrongful act intentionally, without just cause or excuse." 4 B. & C., 255. 9 Metc., 104.

"The wicked, mischievous purpose which characterizes the perpetration of an injurious act without lawful excuse." 4 B. & C., 255. 9 Metc., 104.

The first case cited by the author is, *Bromage v. Prosser*, an action of slander, decided in 1825, and which we need not here notice.

The case cited in 9th Metc. is that of *Commonwealth v. York*. Chief Justice Shaw, in writing the opinion, says: "Malice, in the definition of murder, is imputed to an act done willfully, *malo animo*, an act wrong in itself, and injurious to another, and for which there is no apparent

justification or excuse. * * * The natural or necessary conclusion and inference from such an act, willfully done without apparent excuse, are, that it was done `malo animo` in furtherance of the wrongful, injurious purpose, *previously*, though perhaps suddenly, formed, and is, therefore, 'a homicide with malice of forethought,' which is the true definition of murder."

In *Territory v. Egan*, 13 N. W. Rep., 568, malice is defined to be, "That state of mind or act where one willfully does that which he knows will injure another person or property."

In Whartons' Law Lexicon, malice is defined to be, "A formed design of doing mischief to another, technically *malitia præcogitata* or malice prepence or aforethought. * * * "

In *Harris v. State*, 8 Texas App., 109, it is defined to be, "A condition of the mind which shows a heart regardless of social duty, and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken."

By the foregoing and other citations which we might make, it is apparent that malice, when applied to the case at bar, should be defined as a wicked and mischievous purpose which characterizes the perpetration of a wrongful or injurious act intentionally committed without lawful excuse. It is a mental condition on the part of the actor supposed to exist at the time of the commission of the offense, and is *imputed* to "doing of an unlawful act intentionally, without just cause or excuse."

The district court was perhaps fully justified in adopting the definition given, for the same language is used in defining malice in *Milton v. The State*, 6 Neb., 143, and therefore what is here said can in no sense be said to be a criticism upon the action of the trial court. But for the reasons given, we believe the rule stated in *Milton v. The State* is imperfect, and should not be followed. It is not

given with the usual care and precision of the writer of that opinion, for the reason, doubtless, that it was not an essential element in the case, the testimony failing to show deliberation and premeditation, and on account of which a new trial was given.

The legal definition of malice, given by Webster, is, "Any wicked or mischievous intention of the mind; a depraved inclination to mischief; intention to do an act which is wrongful, without just cause or excuse; a wanton disregard of the rights or safety of others; willfulness."

Plaintiff in error asked the court to give the following instructions, which were refused:

5. " If you belive that, at the time of the killing, the accused was intoxicated, you may consider the fact to rebut the idea that it was done in a cool and deliberate state of the mind necessary to constitute murder in the first degree."

6. " It is proper for you to consider any state or condition of the prisoner at the time of the killing, that is adverse to the proper exercise of the mind and the undisturbed possession of the faculties."

8. " You may take into consideration the intoxication of the accused at the time of the killing, if you find he was intoxicated, as a circumstance to show that the act was not premeditated."

9. " And unless you are satisfied beyond a reasonable doubt that the accused, at the time of the killing, was in such a state of mind that he could form an intention maliciously to kill, and that he did form such intention, you cannot convict him of a higher crime than manslaughter."

It will be observed that these instructions are copied from the instructions set out in the opinion in *Smith v. The State*, 4 Neb., 277. That case, like this, was a prosecution for murder, there being some evidence that the accused was intoxicated at the time of the commission of the offense.

Chief Justice Lake, in writing the opinion, says: " While the evidence may not lead us to believe that they

would have secured a different result, yet, inasmuch as there was some testimony to which they were applicable, and the instructions of the court not covering the entire ground, it was the right of the accused to insist upon their being submitted to the jury." It becomes necessary, therefore, for us to inquire whether or not the substance of these instructions was given by the court upon its own motion. The instructions given bearing upon this feature of the case are numbers seven and seven and a half, which are as follows:

7. "You are instructed that voluntary drunkenness is no excuse or justification for a crime committed under its influence. Still, if in this case you believe from the evidence that at the time of the firing of the fatal shot which caused the death of Warren Long, if you first find from the evidence, beyond a reasonable doubt, that the defendant fired the fatal shot, and that he was at that time intoxicated, it would be a proper circumstance for the jury to consider in determining the question as to whether or not the defendant at that time was capable of premeditation or deliberation, as defined in these instructions; and if, from the testimony before you, you should be satisfied that, before and at the time the defendant struck the fatal blow, he was so deeply intoxicated by spirituous liquors as to be incapable of forming in his mind a purpose to kill and to deliberately and premeditatedly do the act, then such killing under such a state of intoxication could not be murder in the first degree, and it would be the duty of the jury to find him not guilty of that degree of the crime. But you are further instructed that the fact, if proven by the evidence, that the defendant, at the time of the striking of the fatal blow, was intoxicated, it would not be proper for your consideration in determining the question of his guilt or innocence of murder in the second degree or manslaughter."

7½. "You are instructed that, on the question of the intoxication of the defendant at the time of the alleged

killing, if you find from the evidence he was intoxicated, you must be satisfied beyond a reasonable doubt that such intoxication did not incapacitate him from forming a deliberate purpose to kill the deceased, and if you have any reasonable doubt on this question, you must give the prisoner the benefit of such doubt, and find him not guilty of murder in the first degree."

Without stopping to discuss these instructions at length, we must say, generally, that we cannot see but that they were sufficient. They submitted to the jury—*First,* the question as to the intoxication of plaintiff in error; and *Second,* that if they found that he was intoxicated, then they should be satisfied beyond a reasonable doubt that such intoxication did not incapacitate him from forming the deliberate purpose to kill, before they could find him guilty of murder in the first degree. This, we think, correctly stated the law.

In the examination of the witness Brictell, and others, sworn on behalf of the state, it was shown that they were present at the time of the killing, or immediately thereafter, and that they stood by while plaintiff in error walked away holding the gun in his hand. The question was then asked whether the witness. tried to overtake and arrest him, or anything of that kind. His answer was, "No, sir." He was then asked, "Why not?" To this question plaintiff in error objected as incompetent, immaterial, and irrelevant, which objection was overruled and exception noted, when the witness answered, "I did not think it safe to follow him." Plaintiff in error then moved to strike out this answer, assigning the same reasons assigned in his objection, with the additional one that it was only to the prejudice of the prisoner. The motion was overruled, and the answer allowed to stand. In this we think the court erred. It was entirely proper for the witness to testify to the actions, conduct, and appearance of plaintiff in error at, and immediately after, the shooting. It was competent and

proper that the jury should know just what occurred, the manner of the occurrence, and of the circumstances surrounding the transaction, but not proper that the opinion of the witness should be given as to whether it was safe to follow plaintiff in error, for the purpose of making his arrest. Of that the jury were as good judges as the witness, even though it had been a proper inquiry.

In the examination of Sherman Wilson, a witness on the part of the state, it was shown that plaintiff in error was at the hotel kept by one Vizard a short time prior to the shooting; that some difficulty occurred there, when Vizard knocked plaintiff in error down and kicked him, whereupon the by-standers interfered and separated the parties, when plaintiff in error went away, in company with the witness. The witness was then asked to state what plaintiff in error said while walking down the street, and over the objection of plaintiff in error he was permitted to testify that, "plaintiff in error was talking about going back in the morning, and he wanted to go back then and settle with Vizard, and we would not let him." The question was asked, "What did he say to you about getting a gun, while walking down the street?" Over the objection of plaintiff in error, he was permitted to answer that, "He kept talking about going back in the morning and settling with Vizard, and he asked me if I had a gun."

Q.  Who asked you?

A.  Carr.

Q.  What did you tell him?

A.  I told him I sold it; then he asked me if Sam. Davis had a gun, and I told him no. He said he had one down at the office. He said he would see him inside of twenty-four hours and do him up.

Q.  Where was this conversation?

A.  On the other side of the depot.

Q.  Who is Sam. Davis?

A.   He runs a drug store.

Q.   You told him you did not think he had one?

A.   Yes, sir.

Q.   Where did he say his gun was?

A.   Down in the office.

Q.   Did he make any threats, at that time, as to what he would do?

A.   That is about the last words he said, he said he had a gun down at the office, and I left him.

It is insisted that proof of the threats against Vizard or any other person, except deceased, should not have been received.   This testimony might perhaps have been competent, if introduced on the part of plaintiff in error, for the purpose of showing his condition prior to the killing, but we know of no rule which would permit the state to prove threats against persons other than the deceased, for the purpose, either of proving an intention to kill deceased, deliberation, premeditation, or malice.   *People v. Bezy,* 67 Cal., 223.   *Clarke v. The State,* 78 Ala., 474.

It is shown by the bill of exceptions that an assistant attorney was employed to aid in the prosecution.   After the testimony had been closed, the county attorney opened the argument to the jury.   After he had finished, counsel for plaintiff in error stated that they did not desire to reply to the opening argument made by the prosecuting attorney, and requested that the jury be then instructed and sent out to deliberate upon their verdict.   This request was overruled, and the assistant counsel was permitted to follow the county attorney in the argument of the case for the state, over the objection of plaintiff in error.   At this time the assistant counsel arose and said, in the presence and hearing of the jury :   "An attorney, defending a man on trial for his life, that sits down silent and dumbly ! God grant that I may never be defended by such counsel as that !"

Objection was made to his language.

The court then said to the jury: "Gentlemen of the jury, this little side show of the attorneys is not for your consideration, and you shall not consider it, or in any way allow it to influence your deliberations."

Section 478 of the criminal code provides that, " * * * * * When the evidence is concluded, unless the case is submitted without argument, the counsel for the state shall commence, the defendant or his counsel follow, and the counsel for the state conclude the argument to the jury."

The first question presented by this record is, as to the right of the assistant counsel for the state to close the argument, no argument having been made by counsel for plaintiff in error. In support of the position of plaintiff in error, that the argument should have been closed upon the termination of the presentation of the case by the county attorney, we are cited to *Borden v. Briscoe*, 36 Mich., 255. We think the case cited cannot be held to be authority either way, in this case. It was a civil action, and, as in this case, counsel for defense declined to discuss the case to the jury, and the trial court held the argument at an end. The decision of the trial court was affirmed, but Judge Campbell, in writing the opinion, intimates that as junior counsel are generally required to open the argument of the cause to the jury, counsel for the defendant, finding the argument not as forcible as the closing argument may be, might cut off a reply and prevent the whole case from being thoroughly presented to the jury. He says: "We cannot think there is any absolute right in a defendant to produce such a result. Every court is bound, in fairness, to prevent such abuses. But inasmuch as the propriety of interference must depend upon circumstances, we think the matter comes within those discretionary rules which must, unless in extreme cases, leave the trial judge to determine the course of procedure."

We think the case cited cannot be treated as authority

in this case, for the reason that the conditions are not the same. In this state the public prosecutor is selected by the people of the county, with direct reference to his fitness for the office upon which he is called to enter, and his ability to discharge the duties imposed by it. He is the representative of the state, chosen for that purpose, in most instances before the commission of the crime for which he is called to prosecute. After quite as careful an examination of the books within our reach as the time at our disposal would permit, we are unable to find a case in point or a discussion of the subject by a text writer. It is the opinion of the writer that, upon the termination of the opening argument by the state's counsel, the attorneys for the defense might proceed with the argument or not, as they saw proper. Failing to do so, there would be nothing to which a reply could be made by the closing argument, and therefore no such argument was necessary; but that question will not be decided without the benefit of argument thereon.

The language attributed to the assistant prosecutor, uttered in the presence of the jury, cannot be excused, and should not have been permitted, or, if permitted, should have been promptly counteracted by the court.

In the brief of counsel for plaintiff in error, after the quotation of the language from the bill of exceptions, occurs the following: "And the immense audience gathered in the court room cheered him to the echo." This is perhaps more of a rhetorical flourish on the part of the writer of the brief, than a candid statement of a fact. It does not appear in the bill of exceptions, and therefore is not of record. We cannot believe but that by this remark unintended injustice is done to the learned judge before whom the case was tried. It cannot be believed that, in this advanced age of our jurisprudence, any court could be found who would permit such conduct, without visiting the severest penalty of the law upon the parties indulging

in such actions.    It matters not how guilty a defendant may be of crime, our constitution and laws guarantee to him a fair trial.    Such cannot be had in the face of an audience who, by any act, express their approval or disapproval of anything said or done upon the trial.

It is insisted that the evidence does not warrant a conviction for murder in the first degree.    As the cause must be retried, we deem it inexpedient to express any opinion upon this subject, as the evidence upon a subsequent trial may differ in many respects from that submitted upon the trial already had.

For the reasons hereinbefore stated, the judgment of the district court must be reversed, and the cause remanded for further proceedings, which is done.

REVERSED AND REMANDED.

THE other judges concur.