[Crim. No. 110.   In Bank.—July 29, 1896.]

## THE PEOPLE, RESPONDENT, v. S. D. WORDEN, APPELLANT.

CRIMINAL LAW—INSTRUCTIONS.—The instructions in a criminal case must be construed as a whole, and if, without straining any portion of the language, it harmonizes as a whole, and fairly and correctly presents the law bearing on the issues tried, the appellate court will not disturb the judgment, because a separate instruction does not contain all the conditions and limitations which are to be gathered from the entire text.

ID.—JURY BOUND BY LAW.—Under section 1126 of the Penal Code it is not error for the court in a criminal case to charge the jury that they "should receive the law as I state it to be, notwithstanding you may firmly believe that I am wrong, and that the law is or should be otherwise."

ID.—THEORY OF PROSECUTION AND DEFENSE.—The correct statement by the judge to the jury of the theory of the prosecution, and of the defenses of the defendant, is not a statement of the facts.

ID.—ALIBI—REASONABLE DOUBT.—An instruction that "when a defendant undertakes to establish an *alibi*, the evidence which he offers, taken with the other evidence in the case, must account for him during the whole period," is not erroneous in ignoring the doctrine of reasonable doubt, if the other portions of the instructions fully cover that doctrine.

ID.—FORMS OF VERDICT.—In a prosecution for murder in the first degree resulting in a conviction of that offense, in which the court in its general charge gave the statutory definition of murder in the second degree, the omission of the court to give to the jury a form of verdict of "guilty of murder in the second degree" is not erroneous when no instructions were requested by the defendant as to what verdicts the jury could render, or as to their power to find the defendant guilty of any lesser crime than that charged in the information, and the case was presented by the defendant entirely on the theory that he did not do the acts attributed to him by the prosecution.

ID.—REASONABLE DOUBT.—A correct instruction upon the subject of reasonable doubt is not rendered erroneous or misleading by adding thereto the sentence, "A juror is not at liberty to disbelieve as a juror what he believes as a man."

ID.—EVIDENCE—OPINION OF WITNESS.—Whether or not a third person would have seen an object in a particular situation, assumed in a question asked a witness, is not a matter that can be determined by the opinion of the witness.

APPEAL from a judgment of the Superior Court of Yolo County and from an order refusing a new trial. W. H. GRANT, Judge.

The facts are stated in the opinion of the court.

*J. E. Strong*, and *E. R. Bush*, for Appellant.

*W. F. Fitzgerald*, Attorney General, *Charles H. Jackson*, Deputy Attorney General, *Carroll Cook*, and *R. E. Hopkins*, for Respondent.

McFARLAND, J.—The information charges the defendant, together with several other persons, with the murder of one Samuel C. Clark; and he was convicted of murder in the first degree, with the death penalty attached. He appeals from the judgment and from an order denying his motion for a new trial.

The bill of exceptions, which forms part of the transcript, contains a full statement of the evidence given at the trial; but the evidence seems to have been brought here mainly for the purpose of pointing certain exceptions taken to instructions given the jury by the trial judge, for the point is not made that the evidence does not sustain the verdict. Moreover, the record shows that only three exceptions were taken to rulings of the

court on the admissibility of evidence; and only one of these exceptions is presented or mentioned in appellant's briefs. The whole strength and stress of appellant's argument is upon asserted errors committed by the judge of the court below in charging the jury.

We have carefully examined all the instructions given; and, considering them as a whole, we see nothing in them erroneous or prejudicial to the appellant. The appellant presented eleven written instructions, and they were all given except the second, in lieu of which an instruction was given substantially the same as the one asked; and these instructions presented appellant's side of the case very fully and as favorably as he could reasonably have expected. No other instructions were asked by appellant. The only hostile criticism with which the charge can be justly assailed is that, upon some points, it is perhaps too lengthy and elaborate; but we think that it presents a fair and correct statement of the law applicable to the case. But counsel for appellant, in a brief exceedingly well constructed, endeavor with great acuteness and ability to separate the charge into detached fragments, and to attack each singly and unaided by the context. Of course, if any one independent instruction contains an absolute error upon a particular point of law, such error is not always cured by the fact that the law upon such point is correctly given in another instruction; but, as a general rule, dividing a long charge into minute parts, and analyzing and criticising each part as though it stood independent of all the others, is not a proper method of arriving at the correctness or incorrectness of the whole charge. All the features and modifications of a principle of law cannot usually be stated in one sentence. As was said by Mr. Justice McKinstry, when delivering the opinion of the court in *People* v. *Doyell*, 48 Cal. 93: "We must take the charge together, and if, without straining any portion of the language, it harmonizes as a whole, and fairly and correctly presents the law bearing on the issues tried, we will not disturb the

judgment because a separate instruction does not contain all the conditions and limitations which are to be gathered from the entire text."

The briefs of counsel for appellant have many divisions and subdivisions; but we deem it necessary to notice only the leading objections which they make to the correctness of the charge.

We see no error in the language: "You should receive the law as I state it to be, notwithstanding you may firmly believe that I am wrong, and that the law is or should be otherwise." The latter part of the sentence was unnecessary, but it in no way affects the correctness of the proposition that the jury must take the law from the court as declared in section 1126 of the Penal Code, which provides that although the jury have the *power* to return a general verdict, "they are bound, nevertheless, to receive as law what is laid down as such by the court."

The statement by the judge of the theory of the prosecution was not, as contended by appellant, a statement of facts. The jury were carefully informed, both at the commencement and close of said statement, that the judge was only stating the "theory" of the prosecution —what the prosecution claimed. There was no error in this; for instructions should be made, as far as possible, applicable to the particular features of the case on trial—to the issues and contentions developed by the evidence and arguments of counsel. And it appears from the record that the theory of the prosecution was correctly stated. Neither was there any error in the statement of the judge of the defenses of the appellant. The deceased, Clark, was killed in this way: He was a locomotive engineer on a train moving westerly on a railroad track from the city of Sacramento toward Davisville; about two and a half miles west of Sacramento there is a trestle or bridge over a slough on which the track runs; and when the train reached that trestle the locomotive and several of the cars were thrown from the track over the trestle on the north side, and

down into the water, and Clark and several other persons on the train were killed. As stated in the bill of exceptions: "The people introduced a large amount of testimony to the effect and tending to prove that the first rail on the east end of the trestle, toward Sacramento, the direction from which said train of cars was coming, and on the north side of said track, had been removed by human agency, and that the trestlework beneath the rails on the north hand side had been weakened or destroyed by explosives in the form of giant powder applied by human agency also, and that the weakening of said track was caused by the above-mentioned facts." The people also introduced a great amount of evidence directly to the point that the appellant, with others, on the day of the catastrophe, and a short time before the approach of said train, did the acts above described which caused the wreck, and the death of Clark. Now, the judge said, in his charge, that appellant had introduced evidence tending to establish two defenses, namely: 1. That the misplaced rail was caused by climatic influences—that is, by expansion by heat; and 2. "That he was not engaged in the wrecking of the train, but was in the city of Sacramento for some hours both before and after the wrecking occurred." He also said: "This second defense is called in law an *alibi*." We see nothing in this erroneous or prejudicial to appellant. In the first place, it was not said that no evidence was introduced as to other points, and the statement was properly introductory to instructions upon the two defenses named. In the second place, the record shows that the two matters mentioned by the judge as defenses were in fact the only two involved. Appellant introduced eighteen witnesses, and of these the testimony of six—Marston, Creamer, Griffith, Forsythe, Bradshaw and Sims,—was entirely confined to the condition of the tracks of roads operated by the company owning the road on which the killing of Clark took place, the general purpose being to show that the rails were too close together at the ends to allow

of expansion by heat; the testimony of nine—Castello, Hinby, De Riso, Curry, Conrad, Hafer, Knox, Fickett, and Thompson—was confined entirely to the subject of an *alibi;* that is, it went to the point that at the time when, according to the evidence of the people, appellant was engaged in preparing the trestle for a collapse, he was at Sacramento City, or on or near the bridge which spans the river between said city and Yolo county— about two and a half miles away from said trestle; and the testimony of the other three—Barton, Freeman, and Fisk—merely tended to weaken somewhat the testimony of one or two of the people's witnesses about a matter of but little importance. It is clear, therefore, that this part of the judge's charge could not have been prejudicial to appellant.

The judge charged the jury that, "when a defendant undertakes to establish an *alibi*, the evidence which he offers, taken with the other evidence in the case, must account for him during the whole period"; and it is contended that this part of the charge is erroneous, because it does not include the proposition of reasonable doubt whether the appellant was present. But, as before stated, it is not to be expected that all the limitations of a principle will be given in every separate sentence of a charge; and in the case at bar the doctrine of reasonable doubt was given in almost all conceivable forms and made applicable to every phase of the case, and upon the specific question of the *alibi* the judge said: "But if you entertain a reasonable doubt as to his guilt, *or as to his whereabouts* when his presence is material, you should give him the benefit of that doubt." Therefore, we see no error in the charge on this point.

The court prepared and gave to the jury three forms of verdict, and it is contended by appellant that in doing so the court erroneously neglected to give, as one form, "guilty of murder in the second degree." As to this matter the bill of exceptions shows that the judge said to the jury: "There have been prepared for you, gentlemen, three blank forms of verdict which, by con-

sent of counsel, you will be allowed to take to your jury-room"; also that "no objection was made by the defendant or his counsel in response to such charge by the court relative to such forms of verdict, defendant's counsel remaining silent"; also that "no instruction was upon the trial of this cause requested by the defendant or his counsel as to what verdicts the jury could render, or as to what constituted either the crime of murder in the first degree, murder in the second degree, or manslaughter, nor was the court requested by the defendant or his counsel to instruct the jury that it was within their province to find the defendant guilty of any lesser crime than the crime charged in the information." Moreover, it is plain from the evidence introduced by appellant, and the instructions asked by him, that he presented his case entirely upon the theory that he did not do the appalling and "most horrible" acts ascribed to him, and did not participate in such acts—not that the acts if proven would not constitute murder in the first degree. In the general charge the judge gave the statutory definition of murder in the second degree, and did not refuse any instruction asked upon the subject by appellant. Under these circumstances it was not the duty of the judge to affirmatively suggest to the jury that they might convict appellant of a lesser offense when not asked by appellant to do so, and when such suggestion apparently would have been against appellant's wishes; and no error was committed by not doing so.

In the briefs of counsel for appellant the subject of legal malice is largely discussed—an admirable subject for refined disquisition; but we see nothing in the charge upon that subject that is erroneous or substantially different from the definitions of malice to be found in the codes. The same can be said as to the charge about reasonable doubt. Of course, it would be much the better course for trial judges, as has frequently been said by this court, to limit their description of reasonable doubt to language which has received repeated

judicial approval; but they usually des
thing in their own language, and in the
judge added something to the well-known
Chief Justice Shaw. We see nothing, howe
charge on this subject that was erroneous, or l
mislead the jury—even if it did not make the
any clearer. The judge said: "If, after consideri
the evidence, you can say you have an abiding co
tion," etc., and then immediately said as follows:
juror is not at liberty to disbelieve, as a juror, what
believes as a man." This latter clause, of course, re
ferred to a belief founded on the evidence; and a simi-
lar instruction was held in *People* v. *Whitney*, 53 Cal.
420, to be "useless," but not erroneous or misleading.

The charge fully informed the jury that an intent to
take human life is a necessary element of murder in
the first degree. They were told that in order to con-
vict the appellant of murder in the first degree they
must be convinced beyond a reasonable doubt that the
appellant, either personally or in concert with others,
killed the deceased with malice aforethought by some
kind of willful, deliberate, and premeditated killing,
and that " in order to constitute murder in the first
degree, the intent to kill must be the result of deliberate
premeditation." This principle was given to the jury
in various forms; and it is beyond question that the evi-
dence abundantly warranted the jury in finding the ap-
pellant guilty of murder in the first degree—murder of
a most aggravated and shocking character. There was
an unnecessary allusion to the fact that the derailing
of a train is a felony; but that in no way changed the
general nature of the charge.

The one exception to the ruling of the court on the
admissibility of evidence arises upon the sustaining of
an objection by the prosecution to the following ques-
tion asked by appellant of his witness, Sims: " Q.
Now, I will ask you (you need not answer because I
think there will be an objection), if this had been
placed that way, so the flanges of the wheel would come

through here (pointing), would n't the engineer have seen the rail in that position?" Waiving the claim made by the respondent that this exception is not properly incorporated in the bill of exceptions, the ruling of the court was not erroneous. If the matter inquired about was material, the witness could have been questioned about the supposed condition and situation of the rail, the appearance which it would have presented, etc., but whether the engineer *would* have seen it was certainly not a question to be determined by the opinion of the witness. If that was an issue in the case, it was one to be determined by the jury upon the facts proven.

The judgment and order denying a new trial are affirmed.

GAROUTTE, J., VAN FLEET, J., HARRISON, J., HENSHAW, J., TEMPLE, J., and BEATTY, C. J., concurred.

Rehearing denied.