[Crim. No. 1381. In Bank.—February 7, 1908.]

## THE PEOPLE, Respondent, v. EDWARD MANASSE, Appellant.

CRIMINAL LAW—MURDER — SELF-DEFENSE — EVIDENCE — COTEMPORANEOUS SHOOTING AT ANOTHER.—Where the defendant charged with murder relied upon self-defense, and it appeared that he killed the deceased while lying in bed, saying when shooting, "You are the first man," and then immediately turned toward another person saying, "You are the next man," who unsuccessfully tried to seize the gun, and was shot in the back while running away, evidence of such cotemporaneous shooting was admissible and relevant, as tending to show an intention to kill them both, and to disprove the claim of self-defense. Such evidence was not rendered inadmissible merely because showing the commission of another crime than the one for which he was being tried.

ID.—CORROBORATIVE EVIDENCE—SHIRTS OF SECOND PERSON SHOT AT.—
The shirts worn by the second person shot at, at the time of the
shooting, were admissible in corroboration of his testimony, if they
were in a condition to do so, and if not, their admission was harm-
less.

ID.—SCOPE OF CROSS-EXAMINATION OF DEFENDANT.—Although the cross-
examination of the defendant must be limited to subjects testified
to by him on direct examination, yet within the limits of such sub-
jects, he may be asked any questions tending to shake the effect of
his direct testimony.

ID.—CROSS-EXAMINATION AS TO THREATS OF DECEASED—FAILURE TO
COMMUNICATE THREATS—INFERENCE OF JURY.—Where the defend-
ant had testified on his direct examination that his wife had told
him at various times that the deceased had made threats against
his life, he was properly asked on cross-examination whether he had
mentioned the threats to any one, to which he answered in the nega-
tive. Though he was not bound to tell any one of the threats, the
jury might reasonably infer that a person going about in fear of
his life, would be apt to mention the cause of his fears to some one.

ID.—INSTRUCTION AS TO REASONABLE DOUBT—PARAPHRASE.—Where the
court had given the approved instruction as to reasonable doubt,
the addition of the words, "a reasonable doubt is a doubt based
upon reason, and growing out of the testimony and evidence in
the case," is not an incorrect paraphrase of the definition, and does
not import that the jury must give a reason for their doubt.

APPEAL from a judgment of the Superior Court of Sac-
ramento County, and from an order denying a new trial.
E. C. Hart, Judge.

The facts are stated in the opinion of the court.

C. H. S. Bidwell, and Maurice E. Finn, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, for
Respondent.

SLOSS, J.—The appellant, charged with the murder of one
John K. Cook, was found guilty of murder of the first degree,
and judgment of death was pronounced against him. He
appeals from the judgment and from an order denying his
motion for a new trial.

The fact of the killing was admitted, the appellant seeking
to justify his act on the ground of self-defense. The finding
of the jury against this plea is fully sustained by the evidence,

and the only points now made by the appellant are that the trial court erred in overruling two objections to offered testimony, and that its charge to the jury embodied an incorrect definition of "reasonable doubt."

1. It appeared that the defendant, with his wife and others, lived in what was known as "The Big House," at the junction of the American and Sacramento rivers. The deceased, Cook, lived near by in a scow moored in the American River. On the night of December 23, 1906, Cook, together with the defendant's wife and one Hopkins, were in Cook's room on the scow. Hopkins testified that the defendant came to the scow and asked his wife whether she was going up to the Big House with him. Upon her answering in the negative he left. After a few minutes he returned carrying a shotgun. Saying to Cook, "You are the first man," he fired the fatal shot at Cook, who was lying in his bed. He then said, "Hop" (meaning the witness Hopkins), "you are the next man." Hopkins, according to his testimony, then seized the barrel of the gun, and he and Manasse fought their way off the scow on to the bank, where the defendant got the gun away from Hopkins. Hopkins started to run and defendant shot him in the back. Hopkins identified an undershirt and an outershirt as the ones worn by him at the time of the shooting, and these garments were admitted in evidence over defendant's objection that they did not "tend to prove any of the issues in this case, to prove the guilt of the defendant as charged, or to prove the murder."

There is nothing in the record to show what the condition or appearance of the shirts was. If we assume, as is assumed by the appellant in his brief, that the appearance of the shirts indicated that their wearer had received a violent injury, the effect of admitting the shirts in evidence was to corroborate the testimony of Hopkins that the defendant had shot him. Such corroboration was proper, if the fact of such shooting was itself admissible. The attacks upon Cook and upon Hopkins were parts of a single transaction, and every element of defendant's conduct in that transaction could be shown to the jury for the purpose of illustrating his motive and intent in committing the act which was the basis of the charge against him,—i. e. the shooting of Cook. The fact that, after shooting Cook, the defendant attempted to and did shoot

Hopkins, had a direct tendency to support the theory that he had come to the scow with the intent of killing both Cook and Hopkins, and in like manner tended to disprove the claim that the killing of Cook was done in self-defense. The evidence of the shooting of Hopkins being relevant, it was not rendered inadmissible merely because it may also have shown the commission by defendant of a crime other than the one for which he was being tried. (*People* v. *Walters,* 98 Cal. 138, [32 Pac. 864]; *People* v. *Smith,* 106 Cal. 81, [39 Pac. 40]; *People* v. *Craig,* 111 Cal. 460, [44 Pac. 186]; *People* v. *Suesser,* 142 Cal. 363, [75 Pac. 1093]; *People* v. *Soeder,* 150 Cal. 12, 15, [87 Pac. 1017].)

If, then, the shirts were in such condition that their production supported Hopkins's testimony, they were properly admitted for the purpose of corroboration. If, on the other hand, their appearance did not strengthen this testimony—and, in view of the record, this may well be assumed—we cannot see how the admission of the garments could possibly have injured the appellant.

2. The defendant testified in his own behalf. On direct examination he stated that his wife had told him at various times that Cook had made threats against his life. On cross-examination he was asked, "Did you ever tell anybody about any threats that Cook had made against you?" An objection to this question as irrelevant, immaterial, and incompetent, and not proper cross-examination was overruled, and defendant excepted. The question was answered in the negative.

No doubt the ordinary rule is that mere silence is not a fact to be used against a party, unless the circumstances were such as to call for some statement from him. (*Wilkins* v. *Stidger,* 22 Cal. 231, [83 Am. Dec. 64].) But, on cross-examination, a considerable degree of latitude is permitted for the purpose of testing the memory, the bias, the accuracy, or the sincerity of the witness. It is true that, in the case of a defendant charged with crime, his cross-examination must be limited to subjects concerning which the witness testified on direct examination. But within the limits of such subjects the defendant who has offered himself as a witness may be asked any questions which have a tendency to shake the effect of his direct testimony. While the defendant was not bound to tell any one of threats made against him, a jury might

reasonably conclude that one going about in fear of his life would be likely to mention the cause of his fears to some one. That he made no such mention, though in no way conclusive, is a circumstance fairly to be considered in determining whether or not the alleged threats had been communicated to him as he stated, and is therefore a proper subject of cross-examination.

3. The court correctly instructed the jury regarding the presumption of innocence, and the obligation of the people to prove the guilt of the defendant beyond a reasonable doubt. In explaining the term "reasonable doubt," the court gave to the jury the well-known definition of Shaw, C. J., in *Commonwealth* v. *Webster,* 5 Cush. 320, [52 Am. Dec. 711]. In addition to this, the charge included the following language: "A reasonable doubt is a doubt based upon reason, and growing out of the testimony and evidence in the case." It is argued that the portion of the charge which is quoted is erroneous in that it requires the jury "to be able to assign a reason for their doubt." If the language of the court were fairly open to the interpretation so put upon it, there might be some basis for the criticism. There are cases holding it to be erroneous to charge that a reasonable doubt is a doubt "for having which the jury can give a reason." (*Cowan* v. *State,* 22 Neb. 519, [35 N. W. 405]; *Carr* v. *State,* 23 Neb. 749, [37 N. W. 630]; *Morgan* v. *State,* 48 Ohio St. 371, [27 N. E. 710]; *People* v. *Steubenvoll,* 62 Mich. 329, [28 N. W. 883].) Even these cases do not all go to the extent of deciding that the giving of such an instruction constitutes error sufficient, in and of itself, to justify a reversal. But that question is not presented here. The jury were not told that a reasonable doubt was a doubt for which they could give a reason, but that it was a doubt based upon reason. This is no more than a paraphrase, and a not incorrect one, of the term "reasonable doubt." An instruction substantially similar to the one under discussion was sustained by this court in *People* v. *White,* 116 Cal. 17, [47 Pac. 771], as it had been in *People* v. *Shaughnessy,* 110 Cal. 604, [43 Pac. 2]. The reversal of the judgment in *People* v. *Paulsell,* 115 Cal. 6, [46 Pac. 734], was based, not on the giving of this instruction, but on the refusal of the court to define "reasonable doubt" in the language used in the Webster case. It was held to be the right of a

defendant, where he requested it, to have this definition, so often approved by this court, given to the jury. Here the instruction refused in the Paulsell case was given, and the defendant has no ground of complaint because the court amplified it by the addition of a sentence which was neither incorrect nor misleading.

An examination of the entire record discloses no error.

The judgment and order are affirmed.

Angellotti, J., Shaw, J., McFarland, J., Lorigan, J., Henshaw, J., and Beatty, C. J., concurred.