[Crim. No. 82.   Third Appellate District.—February 1, 1909.]

## THE PEOPLE, Respondent, v. D. DEL CERRO, Appellant.

CRIMINAL LAW—GRAND LARCENY—AIDING AND ABETTING—INSTRUCTIONS TAKEN TOGETHER.—In a prosecution for grand larceny of animals, based upon evidence warranting a finding that defendant aided and abetted the crime, and conspired with the thief to steal them, and make a bill of sale to him, and to assist the thief in driving them out of the county for sale, instructions based upon the evidence should be taken together, and one not sufficiently clear, based upon defendant's knowledge of the larceny, and thereafter aiding and abetting the thief in taking and driving them out of the county, is made clear by another instruction that "the defendant is not on trial for, nor charged with the crime of, receiving stolen property, and unless you are satisfied to a moral certainty and beyond a reasonable doubt that the defendant did actually steal said animals, or that he was concerned in the commission of the larceny, and aided and abetted, or, not being present, advised and encouraged its commission, you should find the defendant not guilty."

ID.—CONSTRUCTION OF CHARGE OF COURT.—In determining the propriety of instructions, the entire charge of the court must be considered, and if, as a whole, it correctly states the law, it is free from error, notwithstanding selected passages may state a proposition without at the same time and in immediate connection stating the exceptions or qualifications to which.it is subject in its application to the case in hand.

ID.—INSTRUCTION AS TO "REASONABLE DOUBT"—LANGUAGE OF CHIEF JUSTICE SHAW SUFFICIENT.—When a court has properly instructed the

jury as to the law of reasonable doubt in the oft-approved language of Chief Justice Shaw, which is sufficient for all courts of last resort, it should be sufficient for the trial court, without further amplification, but it is held that the amplification made in the present case, rightly understood, is within the proper doctrine of reasonable doubt as given by Chief Justice Shaw.

ID.—REASONABLE DOUBT "ARISING FROM EVIDENCE" OR "UNSATISFACTORY EVIDENCE."—An instruction that a reasonable doubt must have some reason arising out of the evidence in the case, which can be found therein, and that, as applied to the evidence in criminal cases, it means an actual and substantial doubt growing out of the unsatisfactory nature of the evidence in the case, and that the jury cannot go outside of the evidence to hunt up a reasonable doubt on which to acquit, is not erroneous.

APPEAL from a judgment of the Superior Court of Madera County, and from an order denying a new trial. W. M. Conley, Judge.

The facts are stated in the opinion of the court.

Raleigh E. Rhodes, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

HART, J.—The defendant was convicted of the crime of grand larceny, and prosecutes this appeal from the judgment and the order denying him a new trial.

The principal points urged for a reversal involve certain instructions given to the jury by the court, and in which it is contended that the law pertinent to the charge and the evidence was erroneously declared.

The property charged to have been stolen consisted of about a dozen head of livestock—horses and mules—and are alleged to be the personal property of Miller & Lux, incorporated.

The animals were taken from what is known as the "New Columbia Ranch," of Miller & Lux, situated in Madera county. The bill of exceptions does not contain the evidence introduced on behalf of the defendant; but the evidence presented by the people shows the facts to be, substantially, as follows: On the 24th of September, 1907, the defendant made arrangements, in his own name, for pasture for a dozen head of young stock, with one B. H. Bissell, a farmer at Dry Creek, about fourteen

miles from the city of Fresno. The animals remained in the Bissell pasture until the nineteenth day of October, 1907, when the defendant sold them to Bissell for the sum of $950. In the latter part of November, 1907, it was discovered that the stock had been stolen from Miller & Lux, and the defendant, having been questioned by said Bissell and one White concerning the circumstances under which he acquired possession of the animals, explained that he had bought them from two Mexicans. After his arrest the defendant, while confined in the county jail, made a further statement in explanation of his possession of the stock. In this statement, which was received in evidence at the instance of the people, he again declared that he had bought the stock from a man known by the name of Del Carlo, sometimes called Bisso; that he paid Bisso the sum of $650 for the stock, and that he made the payment in the barroom of the hotel of one Barsotti, in Madera; that, after having been informed that the stock had been stolen, he wrote a letter of inquiry to ascertain the whereabouts of Bisso, and subsequently learned that the latter was in San Francisco. Barsotti corroborated the defendant as to the payment of $650 to Bisso, who, after such payment, departed from the hotel, and was never thereafter seen by the witness.

David Alsup, an employee of Miller & Lux, testified that he had charge of the young stock of Miller & Lux on the Columbia ranch, and that a man named George Del Carlo, also known as and called Bisso, worked for the corporation under the direction of the witness; that he ceased working on and left the ranch about the last of October or November, 1907. This witness stated that Del Carlo was an Italian. R. C. Farris, of Clovis, Fresno county, testified that the defendant came to his place and said "he had some stock he had to sell and get rid of, and he wanted to know if I would sell them for him—sell them or buy them from him. There were ten head. I told him to bring them ahead and I would see what I could do with them." The defendant drove the stock to Farris' place, but the latter did not buy because he could not agree to the price asked by the defendant. The defendant left the stock at Farris', authorizing the latter to sell the animals if he could. After the lapse of eight or ten days the defendant returned, accompanied by a "tall young fellow and a middle-aged man," and drove the stock away.

We have thus presented a sufficient synopsis of the evidence to illustrate and explain the pertinency of the objection of counsel to instruction No. 24, which was read to the jury by the court.

The instruction reads as follows: "In determining whether the defendant is guilty of the larceny as charged, I instruct you that it is not necessary for the people to prove that the defendant actually participated in the act of leading or driving the animals away from the possession of the owner. If you believe to a moral certainty and beyond a reasonable doubt that the defendant *knew said animals were feloniously taken, led or driven away from their said owner and that the defend- ant did thereafter aid and abet the thief in taking or driving the animals out of the county of Madera* (italics ours), or, not being present, the defendant has advised and encouraged the commission of the crime charged, then I charge you that it is your duty to find the defendant guilty."

It is that part of the foregoing instruction which we have italicized of which complaint is made, and it is contended by counsel for appellant that the jury were thus in effect told that "if the defendant knew the animals were stolen from Miller & Lux, and, after the theft, received the loot and disposed or assisted in the disposition of the same, he is guilty of grand larceny."

We cannot assent to the construction thus given the instruction. It will not for a moment be doubted that the portions of the instruction not in italics correctly state the law, and it is evident that all the court intended or attempted to say to the jury was that, in order to justify a conviction of the defendant under the allegations of the information, it was not necessary that it should be shown that the accused was actually present when the act of the felonious taking of the stock in the first instance was committed, if it were shown beyond a reasonable doubt that he otherwise aided and abetted or assisted in the felonious asportation. And we cannot conceive of any way in which such aid or assistance toward the consummation of the crime could be more effectually given than by taking active part in driving the stock, which the accused knew to be stolen, into another county than that in which it was feloniously taken, or to a point so remote from the place at which the larceny was committed as to at least postpone, if not altogether circumvent, discovery of the thieves and their booty. It was,

unquestionably, the theory of the prosecution, fully justified under the evidence, that the defendant and Del Carlo, from whom the accused claimed to have bought the stock, had originally entered into a conspiracy to steal the property, and that in the prosecution of the criminal enterprise the last named was to do the actual taking of the property from the ranch on which the animals were pastured, while the defendant's part was to dispose of the same, and that after Del Carlo had driven the animals from the ranch some distance, the defendant, by prearrangement, joined him and assisted in driving the stock into Fresno county. The criticised instruction was undoubtedly given for the purpose of covering such theory.

The charge of the court, so far as it appears in the record, contained a full and clear amplification of the principles of law applicable to the issues submitted for trial and the evidence received in support thereof. And, while the instruction under consideration does not involve that clearness of expression which should characterize all statements of law to a jury, composed generally of laymen, unfamiliar with legal nomenclature, it must, we think, have clearly appeared to the jury, in view of the other instructions given, that the court did not therein intend to tell them that one who, knowing property to have been stolen, has subsequently received or bought the same, having had nothing to do with its asportation, could be guilty of larceny. By the instruction, numbered 20, the court, in singularly perspicuous language, explained to the jury the elements of which the crime of receiving or buying stolen property by one who knows, when so receiving or buying, that the same has been stolen, is constituted, and declared to the triers that the defendant was not on trial for said offense. The instruction, in part, reads: " . . . and although the jury may believe from the evidence that the animals described in the information were stolen from Miller & Lux, Incorporated, a corporation, and were received by the defendant with a knowledge that they were stolen, still the defendant is not on trial for, nor charged with the crime of, receiving stolen property, and unless you are satisfied to a moral certainty and beyond all reasonable doubt that the defendant did actually steal said animals, or that he was concerned in the commission of the larceny and aided and abetted, or not being present advised

and encouraged its commission, you should find the defendant
not guilty.''

We are of the opinion, as suggested in the outset, that the
effect of instruction No. 24, as given by the court, while liable to
the criticism that its phraseology is not as clear as it could and
should have been, is not to be given the construction to which
the appellant subjects it, and that, in any event, considered
in connection with the entire charge of the court, particularly
with instruction No. 20, the defendant could have suffered no
prejudice therefrom. As is said in the case of *People* v. *Men-
denhall,* 135 Cal. 346, [67 Pac. 326] : ''It has been decided
over and over again in this court that the entire charge must
be considered, and if, as a whole, it correctly states the law, it
is free from error, notwithstanding selected passages may state
a proposition without at the same time and in immediate con-
nection stating the exceptions or qualifications to which it is
subject in its application to the case in hand.'' (See, also,
*People* v. *Doyell,* 48 Cal. 85; *People* v. *Flynn,* 73 Cal. 511,
[15 Pac. 102] ; *People* v. *Worden,* 113 Cal. 569, [45 Pac. 844] ;
*People* v. *Quimby,* 6 Cal. App. 482, [92 Pac. 496].) The doc-
trine, as thus stated, is, as the court in the Mendenhall case,
*supra,* declares, ''very clearly and very justly applicable'' to
the instruction in question here.

It is next insisted that the court erred in its instruction
upon the doctrine of reasonable doubt. After instructing the
jury upon this subject in the oft-approved language of Chief
Justice Shaw, in *Commonwealth* v. *Webster,* 5 Cush. 295, [52
Am. Dec. 711], the court proceeded: ''The term, 'reasonable
doubt,' as used in these instructions, means a doubt which has
some good reason for it, arising out of the evidence in the
case; *such a doubt as you are able to find a reason for in the
evidence.* As applied to the evidence in criminal cases, *it
means an actual and substantial doubt* growing out of the un-
satisfactory nature *of the evidence in the case.* It does not
mean a doubt which arises from some mere whim or vagary,
or from any groundless surmise or guess; and while the law
requires you to be satisfied from the evidence of the defend-
ant's guilt, beyond a reasonable doubt, *it at the same time pro-
hibits you from going outside of the evidence to hunt up doubt
upon which to acquit the defendant.* In arriving at your ver-
dict, it is your duty to carefully and candidly consider the

9 Cal. App.—49

*entire evidence in the case,* and in so doing you should *entertain such doubts only as arise from the evidence* and are reasonable, as defined in these instructions.'' (We have followed counsel for appellant in his brief in the matter of italicizing certain portions of the foregoing instruction.)

The specific criticism directed against said instruction is: **1.** That the jury were therein told that they were justified in entertaining such doubt only as they were able to find a reason for in the evidence, and that, therefore, they were in effect instructed that they could not found a reasonable doubt on the *lack,* or *absence* of evidence; **2.** ''That such doubt means an *actual and substantial doubt''*; **3.** ''That they (the jury) can consider *only* such doubt as arises *from the evidence.''*

It will perhaps accomplish no useful purpose to suggest generally to *nisi prius* judges that, in giving their instructions to juries in criminal cases, they should restrict themselves, upon the doctrine of reasonable doubt, to the use, literally, of the language employed by Chief Justice Shaw in his great exposition of that doctrine in the Webster case, *supra,* and to not undertake to amplify the subject in language of their own. We say that it will perhaps be useless to thus caution trial judges, because the supreme court has so often, in the plainest kind of language, warned such judges of the danger of going beyond the language used in the Webster case in explanation of this doctrine, that it would seem that such warnings would be constantly in the minds of those presiding over the trials of criminal cases, so that they would content themselves with the clear and simple language of Chief Justice Shaw, however strong the temptation may be to make the experiment of determining how far they can wade out into deep water without disappearing beneath the surface.

The ''reasonable doubt,'' as defined by Chief Justice Shaw, is good enough for all the courts of last resort of the country, and, it would seem, ought to be good enough for those judges the records of whose cases must finally be reviewed with a view of determining whether an accused has been tried according to the established forms of law.

But, while we think that some portions of the instruction here could have well been eliminated, we are of the opinion that, rightly understood, the instruction is in reality within the definition of the doctrine of reasonable doubt as given by Chief Justice Shaw.

Counsel's principal objection to the instruction is that it limits the source from which a reasonable doubt may arise to the evidence actually produced in the case. It has been held, in some jurisdictions, that an instruction in which it is declared that the reasonable doubt of the defendant's guilt must arise out of the evidence is erroneous. It is so held in Indiana, where, in *Brown* v. *State,* 105 Ind. 385, [5 N. E. 900], the supreme court says: "It is not the law that in order to justify an acquittal the doubt must arise out of the evidence, and be such as to cause a prudent man to hesitate. The doubt may arise from want of evidence." This criticism, we do not hesitate to say, deferentially, is rather hypercritical than sound or substantial. When the court tells a jury that the reasonable doubt must arise from the evidence in the case, it is, it would seem, only a sensible understanding of such instruction that what is meant is that such doubt can only arise from the insufficiency of the evidence, in weight, to persuade the conviction that the defendant is guilty. If the evidence is strong enough to establish the guilt of the accused, beyond a reasonable doubt, then, obviously, no reasonable doubt can arise from the evidence. If, on the other hand, it is not of sufficient strength to show guilt beyond a reasonable doubt, then a reasonable doubt necessarily arises from the insufficiency of the evidence to justify a conviction. We think that it is clear that the idea intended to be conveyed by the language that a reasonable doubt must arise from the evidence in the case is that the jury are not authorized to go outside of the record to hunt for a pretext on which they can predicate a reasonable doubt of the defendant's guilt. That such is the meaning of the instruction here is emphasized by the language, " . . . as applied to the evidence in criminal cases, it means an actual and substantial doubt *growing out of the unsatisfactory nature of the evidence in the case.*" This language states the source from which a reasonable doubt may arise succinctly and correctly. If the nature of the evidence is unsatisfactory—that is, if it is incapable of producing conviction, beyond a reasonable doubt, in the minds of the jurors, of the guilt of the accused—then there arises and exists the reasonable doubt which entitles the defendant to an acquittal, and such doubt is not the offspring alone of the *evidence which has actually been produced,* but of the failure to produce such evidence as would remove all reasonable doubt. Nor is there any serious objection to that part

of the instruction in which the jury were informed that they could act only upon such a reasonable doubt as they "were able to find a reason for in the evidence." This part of the instruction is to be understood, when rationally construed, to mean that the reason from which a reasonable doubt may proceed or upon which it may be formed must be found in the nature or character of the evidence introduced into the record. Manifestly, the reason for a reasonable doubt could legally come from no other source, as we have already endeavored to show.

The language here used is very much different from that employed in instructions upon reasonable doubt held to be misleading and erroneous in the cases upon which appellant relies. For instance, in *Cowan* v. *State,* 22 Neb. 519, [35 N. W. 408], the instruction contained this language: " . . . It is a doubt for having which the jury can give a reason based upon the testimony," and it was held that such language was not a correct definition of a reasonable doubt, and a like instruction was condemned and the cause reversed therefor in *Carr* v. *State,* 23 Neb. 749, [37 N. W. 630]. This language is amenable to the criticism that it is misleading, in that a jury might understand therefrom that they were expected to be able to give some reason based on the testimony in the case for the reasonable doubt upon which they acquitted the accused.

Here the instruction contains no such language. There is nothing in the instruction from which the jury could infer that they were required to assign a reason for their doubt. They were simply told, in effect, as we have seen, that a reasonable doubt is a doubt based upon some reason for which the nature of the evidence would furnish justification. (*People* v. *Manasse,* 153 Cal. 10, [94 Pac. 92].)

The court's declaration that such doubt "means an actual and substantial doubt " is also criticised in a general way, but we perceive no merit in the criticism. It is clear that the court intended by the use of that language to say in a different form what it subsequently in the same instruction declared, with clearness, in describing a "reasonable doubt," that such doubt was "not one arising from some mere whim or vagary, or from any groundless surmise or guess." The doctrine of reasonable doubt, in criminal cases, like that of the presumption of innocence, *is* an actual and substantial doctrine, and not a mere fiction, invented and invoked for the purposes of

convenience only, and it is well that juries, in the trial of criminal cases, should be made to fully understand and appreciate its significance and importance as applied in such cases.

The views we have expressed upon the instruction under review are not in conflict with any of the California cases to which our attention has been directed, while our supreme court has in a number of instances refused to reverse cases for instructions upon the subject of reasonable doubt much more vulnerable than the one here.   (See *People* v. *Kernaghan,* 72 Cal. 609; *People* v. *Chun Heong,* 86 Cal. 333, [24 Pac. 1021].)

Other alleged errors are assigned in the giving of and refusing to give certain other instructions, but as it is plainly manifest, from an examination thereof, that the court did not err in its action with reference to these instructions, we are not required to give the assignments special attention.

The cause appears to have been fairly tried and the law of the case fully covered in the court's charge to the jury.

The judgment and order are affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 1, 1909.